41034.00106-HBM

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**
Howard B. Mankoff, Esq.
425 Eagle Rock Avenue, Suite 302
Roseland, NJ 07068
☎973-618-4100    🖷973-618-0685
📧 hbmankoff@mdwcg.com
ATTORNEYS FOR DEFENDANTS – Borough of Woodcliff Lake, N.J. and Zoning Board of Adjustment of the Borough of Woodcliff Lake, N.J., Carlos Rendo, individually and in his official capacity as Mayor of the Borough of Woodcliff Lake, and Paul Bechtel in his official capacity as Property Maintenance Officer of the Borough of Woodcliff Lake

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
#### NEWARK
### ** ELECTRONICALLY FILED **

| | |
|---|---|
| Valley Chabad, Inc., a New Jersey nonprofit corporation, and Rabbi Dov Drizin,<br><br>Plaintiffs<br><br><br>v.<br><br>Borough of Woodcliff Lake, N.J. and Zoning Board of Adjustment of the Borough of Woodcliff Lake, N.J., Carlos Rendo, individually and in his official capacity as Mayor of the Borough of Woodcliff Lake, and Paul Bechtel in his official capacity as Property Maintenance Officer of the Borough of Woodcliff Lake<br><br>Defendants | CASE NO.:  2:16-CV-08087-JLL-JAD<br><br><br>Civil Action<br><br><br>**ANSWER** |

Defendants, by way of Answer to the Complaint, state:

**NATURE OF ACTION**

1. This is the plaintiffs' description of the cause of action the plaintiffs believe they can maintain. As such, no answer is required. To the extent the plaintiffs mean to imply in this paragraph there are facts which support the alleges causes of action, the defendants deny any such allegations.

2. Denied.

3. Denied.

4. Denied.

5. Denied.

**PARTIES**

6. Admitted.

7. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

8. Admitted.

9. Admitted.

10.   Admitted.

11.   Admitted.

**JURISDICTION AND VENUE**

12.   Admitted.

13.   Admitted.

2

## FACTUTAL ALLEGATIONS

14.     After  reasonable  investigation,  the  defendants are  without  sufficient  information  to  admit  or  deny  this allegation.

15.     After  reasonable  investigation,  the  defendants are  without  sufficient  information  to  admit  or  deny  this allegation.

16.     After  reasonable  investigation,  the  defendants are  without  sufficient  information  to  admit  or  deny  this allegation.

17.     Defendants admit that the property located at 100 Overlook Drive, Woodcliff Lake, New Jersey identified on the Borough Tax Map as Block 908, Lot 1 is approximately 1.27 acres in size.

18.     Defendants admit that the existing structure is 1½ stories and approximately 3,194 square foot single family dwelling; after reasonable investigation, the defendants are without  sufficient  information  to  admit  or  deny  this allegation.

19.     After  reasonable  investigation,  the  defendants are  without  sufficient  information  to  admit  or  deny  this allegation.

3

20.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

21.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

22.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

23.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

24.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

25.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

26.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

LEGAL/108424470.v1
FOLDER 4 - PLEADINGS / ANSWER

27.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

28.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

29.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

30.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

31.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

32.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

33.   The defendants admit there are Chabad houses in Teaneck, Tenafly, Old Tappan, Franklin Lakes, Paramus, Fort Lee, and Fairlawn. The defendants have no knowledge as to whether these are the nearest Chabad houses to the plaintiffs' Chabad house in Woodcliff Lake.

34.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

35.  Defendants admit that the residence at 100 Overlook Drive, Woodcliff Lake, New Jersey is used for certain religious services and other functions, however, Defendants deny that from a zoning analysis it constitutes a house of worship and Defendants are without information sufficient to form a belief as to whether or not it constitutes an Orthodox Jewish facility and that it is the only facility that does so.

36.  The Defendants deny that the Chabad is the only Jewish house of worship in the geographic area conducting an Orthodox Jewish service and Defendants are without information sufficient to form a belief as to whether it requires congregants to be members or not and any remaining allegations of paragraph 36 are denied.

37.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

38.  Defendants admit the allegations of paragraph 38 based upon the testimony of Rabbi Dov Drizin.

39.  Denied.

40. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

41. Denied.

42. Defendants admit that Chabad has used other locations for significant events including the Hilton Hotel; however, all of the remaining allegations of paragraph 42 are denied.

43. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

44. Denied.

45. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

46. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

47. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

48. Defendants admit that bar and bat mitzvahs with a capacity of 100-150 attendees cannot currently be conducted

7

on the site of the single family residence located at 100 Overlook Drive, Woodcliff Lake, New Jersey .

49.    Defendants admit that religious weddings for 100-150 attendees cannot be conducted at 100 Overlook Drive, a single family residence.

50.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

51.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

52.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

53.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

54.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

55.    Denied.

56.    Denied.

57.    Admitted.

8

58.   Defendants admit that a limited egg farm and residence abuts the property to the south which is likely to be a single family residential subdivision in the future. Defendants deny that it is only a farm as there is a residence within 20 feet of the proposed retaining wall.

59.   Defendants admits that to the immediate north of the property is vacant land; however, the remaining allegations of paragraph 59 are denied.

60.   Defendants admit Temple Emanuel of the Pascack Valley is located across the street to the west of the property, however, Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 60 of the complaint.

61.   Defendants admit that single family residents are located north of Temple Emanuel and northwest of the property, however, single family residents are also located to the south, east and west of the property.

62.   Defendants admit that to the immediate east of the property is the Garden State Parkway and that on other side of the Garden State Parkway there are lighted ball fields, the Woodcliff Lake Municipal Pool and the Woodcliff Lake Public Works, however, they are not immediately east of

9

the property and there are other residents located on the other side of the Garden State Parkway.

63.   It is admitted that Woodcliff Lake is approximately four miles from Monsey, New York. The defendants, after reasonable investigation, lack sufficient information to admit or deny the allegation concerning the number of Haredi Orthodox Jews who reside in Monsey, New York.

64.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

65.   Defendants deny the allegations of paragraph 65 of the complaint. The property is zoned R-30 and probably has been since 1998.

66.   Defendants admit that the property is zoned R-30 and the remaining allegations of paragraph 66 are denied.

67.   Admitted.

68.   Admitted.

69.   Defendants admit the allegations of paragraph 69 of the complaint.

70.   Defendants admit that the Chabad agreed that large assemblies such as bar mitzvahs and weddings would not be held off the property and that its use would be limited to

10

Friday and Saturday religious services and other occasional gatherings which occurred in or around 2005 and/or 2008; however, all of the remaining allegations are denied including that the 15 person and family member limitations were abandoned and that no numerical limitation was established. Based upon the testimony of Rabbi Dov Drizin before the Zoning Board, the 15 person and family limitations have and are being violated.

71.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

72.    The Defendants admit that some limited and unsuccessful attempts were made by the Chabad to obtain property in Woodcliff Lake, however the Chabad voluntarily cancelled all contracts and efforts.   The remaining allegations of paragraph 72 of the complaint are denied.

73.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

74.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

11

75.   Defendants deny the allegation of paragraph 75 of the complaint.  Plaintiffs abandoned all attempts to obtain a property that was at least three acres in size and had 400 feet of frontage.   Plaintiffs have voluntarily cancelled contracts and efforts to obtain property including, but not limited to, the "Higgins" property in Hillsdale, New Jersey (still undeveloped), the "Hathaway" property, the "County Road" property and the "Galaxy Garden" property.

76.   Defendants admit that Chabad identified some properties that it thought were suitable, however, the remaining allegations of paragraph 76 of the complaint are denied.

77.   Defendants admit that the Plaintiff identified the Hathaway property located at 75 Werimus Road.

78.   The defendants admit that the Hathaway property is over three acres in size and is adjacent to property owned by the Borough. After reasonable investigation the defendants are without sufficient information to admit or deny the remaining allegations in this paragraph.

79.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

12

80.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

81.   Denied.

82.   Denied.

83.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

84.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

85.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

86.   The Defendants admit that the Chabad terminated the contract for the "Hathaway" property based upon the testimony of Rabbi Dov Drizin that the property didn't make sense and there were other issues with the property.

87.   Admitted.

88.   Denied. The property is used for recreational purposes.

13

89.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

90.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

91.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

92.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

93.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

94.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

95.   Defendants are without knowledge sufficient to form a belief as to the truth of the allegations of paragraph 95 of the complaint; however, Rabbi Dov Drizin testified that the Chabad walked away from the property and that the sellers had breached the contract.

14

96.    Defendants admit that the Borough did not acquire the properties on County Road; however, all the remaining allegations of paragraph 96 are denied.

97.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

98.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

99.    After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

100.   Defendants deny any strong objection to the acquisition and is without information sufficient to form a belief as to the remaining allegations of paragraph 100 of the complaint.

101.   Denied.

102.   Admitted to the extent that any property can be developed as a tax ratable property.

103.   Denied.

104.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

15

105.  After  reasonable  investigation,  the  defendants are  without  sufficient  information  to  admit  or  deny  this allegation.

106.  Admitted.

107.  Admitted.

108.  Admitted.

109.  After  reasonable  investigation,  the  defendants are  without  sufficient  information  to  admit  or  deny  why Kerlopian  terminated  his  contract  with  the  Chabad  in  the  Fall of  2012.

110.  Defendants  deny  that  the  "Galaxy  Garden"  is  a suitable  site  for  numerous  reasons,  including  but  not  limited to:  (a)  is  undersized,  (b)  at  a  dangerous  "T"  intersection, (c)  contaminated  with  an  estimated  cost  of  remediation  in excess  of  $500,000.00  and  (d)  unlikely  to  receive  necessary county  approval  and  if  at  all  with  considerable  expense  and limitations.  Any  remaining  allegations  of  paragraph  110  are denied.

111.  Admitted.

112.  Admitted.

113.  Admitted.

114.  Defendants  admit  that  the  Galaxy  Gardens  property had  been  on  the  market  and   are  without  knowledge  sufficient

16

to form a belief as to the truth of the remaining allegations of paragraph 114 of the complaint.

115.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

116.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

117.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

118.   The defendants admit the property had been used as a gasoline service station and a landscaping and plant nursery center. The defendants are without sufficient knowledge to admit or deny the allegation concerning the date specified in this paragraph.

119.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

120.   Defendants deny the allegations of paragraph 120 of the complaint based upon the testimony of Rabbi Dov Drizin that the Chabad voluntarily withdrew its contract.

17

121. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

122. Denied.

123. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

124. The defendants are without sufficient information to admit or deny any allegation concerning properties in which the Chabad was interested in purchasing or developing.

125. The defendants admit that on October 21, 2013, the Borough placed the issue of Galaxy Gardens on the agenda for its regular meeting. The defendants do not understand and are unable to respond to the allegation that "this was prior to any application for land use approval by the Borough or Board."

126. Admitted, as this is the usual procedure.

127. Denied to the extent the plaintiffs mean to imply that these were all of the comments made by counsel member Rosenblatt. The remarks are taken out of context.

128. Denied to the extent that the plaintiffs mean to imply these were the only words spoken by counsel member Bae.

18

The defendants contend the quoated language is taken out of context.

129.   Denied.

130.   Because the plaintiffs do not identify the alleged speaker of the remarks, the defendants are without sufficient information to admit or deny the allegation.

131.   Denied.

132.   Denied.

133.   Admitted.

134.   It is admitted that the remarks were made, but denied that it had anything to do with discrimination against Haredi Orthodox Jews.

135.   Denied.

136.   Denied.

137.   It is admitted that the public comments were made but denied that the remarks in any way influenced the decisions of the Borough Council.

138.   Admitted.

139.   Admitted.

140.   Denied. The Hathaway property is used as open public space.

141.   Denied.

142.   Denied.

143. Admitted.

144. Denied.

145. It is admitted that council member Jacqueline Gadaleta uttered the words which are quoted in this paragraph but it is denied that council member Gadaleta's relevant remarks are included in full here and the remarks which are included are taken out of context.

146. The council member is not identified so the defendants are without sufficient information to admit or deny this allegation.

147. Admitted.

148. Admitted.

149. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

150. The defendants admit the part of the allegation regarding the resolution authorizing the Borough to contract for an appraiser. It is denied that the Borough's options were limited to eminent domain.

151. Admitted.

152. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

153.  Admitted.

154.  Admitted.

155.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

156.  Denied.

157.  Admitted.

158.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

159.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

160.  It is admitted that the remarks were uttered but it is denied that the remarks influenced or were the basis of any decisions made by the Borough in regard to the plaintiffs.

161.  Defendants admit a group was formed called Concerned Neighbors and Residents of Woodcliff Lake, Inc.; however, the remaining allegations of paragraph 161 of the complaint are denied.

LEGAL/108424470.v1
FOLDER 4 - PLEADINGS / ANSWER

162. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

163. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

164. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

165. Defendants admit that the Chabad voluntarily decided not to pursue the purchase of Galaxy Gardens; however, the Defendants are without information sufficient to form a belief as to the truth of any remaining allegations.

166. Denied. The Borough is still trying to acquire the property.

167. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

168. Admitted.

169. The plaintiffs do not identify the Borough council member, so the defendants are without sufficient information to admit or deny this allegation.

22

170.   Admitted the remark was made, but it is denied that it in anyway influenced the decisions of the defendants in regard to the plaintiffs.

171.   Defendants deny that a search for alternate properties in the Borough was made and is without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 171 of the complaint.

172.   Defendants deny that Plaintiff has engaged in any exhaustive search for suitable property for ten years and deny that the only viable option was to develop its own residential property on Overlook Drive as a house of worship. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 172 of the complaint.

173.   Defendants admit the allegations of paragraph 173 of the complaint.

174.   Defendants admit the allegations of paragraph 174 of the complaint.

175.   Defendants admit the allegations in paragraph 175 of the complaint.

176.   It is admitted the ordinance does not define churches or houses of worship. It is denied that this is an issue in this case.

23

177.   Houses of worship are permitted as a conditional use in the majority of the Borough's property which is zoned residential.  Defendants admit that houses of worship are not permitted in the zones that constitute the remaining other zoning districts.

178.   Admitted.

179.   Admitted.

180.   Admitted.

181.   Admitted.

182.   Defendants admit that residences including community residences for developmentally disabled persons with head injuries and shelters for victims of domestic violence are not required to have three acres.  Any remaining allegations of paragraph 183 of the complaint are denied.

183.   Defendants admit residences and community residences as defined are not required to have three acres.

184.   Denied.

185.   Denied.

186.   Denied.

187.   Defendants admit that residential uses have lot sizes of from 8,150 square feet to 30,000 square feet.  All remaining allegations of paragraph 187 of the complaint are denied.

24

188.  Admitted but denied to the extent the plaintiffs mean to imply that the Post Office is valid comparator.

189.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

190.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

191.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

192.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

193.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

194.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

195.  Defendants deny the allegations of paragraph 195 of the complaint.  Plaintiffs have not conducted an inquiry of available sites within the Borough and there have been and

25

will be larger and more suitable lots available for the Plaintiff including property within the Pascack Valley area, property located at 291 Chestnut Ridge Road (3.4 acres), property located on Pascack Road north (3 acres), property located on Pascack Road south (6 acres), property located on Brookview Drive. In addition, the Borough is primarily zoned residential and there is opportunity to assemble lots to meet the three acre requirements. In addition, the "Higgins" property identified by Plaintiff that is within one mile of Plaintiff's property remains undeveloped.

196. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

197. Defendants admit that Temple Emanuel is a house of worship that was approved since enactment of the three acre lot minimum zoning requirement which is situated on a lot in excess of three acres, however, the remaining allegations of paragraph 197 of the complaint are denied.

198. Admitted.

199. Defendants deny that there are six houses of worship located in the Borough as there are only five.

200. Defendants deny the allegations of paragraph 200 of the complaint. Of the five houses of worship, three

26

comply with the three acre requirement, one is 2.22 acres with a 13,000 square foot building and the other is a 5,000 square foot building on .72 acres.

201.  Denied.

202.  Denied.

203.  Denied.

204.  Denied.

205.  Denied.

206.  Admitted.

207.  Defendant admits that there is a case in New Jersey Coventry Square v. Westwood Board of Adjustment, 138 N.J. 285 (1994); however, the interpretation of the case is not a factual allegation and the remaining allegations are incompletely and inaccurately stated and therefore denied.

208.  Admitted.

209.  Defendants deny that a religious institution is per se an inherently beneficial use under New Jersey law and therefore the allegations of paragraph 209 of the complaint are denied.

210.  Admitted.

211.  Defendants deny that a house of worship is a per se inherently beneficial use. The defendants admit that there is a New Jersey case Sica v. Board of Adjustment of Twp. of

27

Wall, 127 N.J. 152.   All the remaining allegations of paragraph 211 are arguments of law and not factual statements and therefore they are denied.

212.   The allegations in paragraph 212 are not factual allegations but arguments of law provided, however, in the event that a response is required, Defendants admit that it considered detrimental effects, admit that the detrimental effects could not be reduced by imposing any reasonable conditions on the use as required of the application presented to the Zoning Board.

213.   Defendants admit that for a "D" variance five affirmative votes are required and the remaining allegations of paragraph 213 are denied.

214.   Defendants state that the allegations of paragraph 214 of the complaint are not factual and therefore no response needs to be provided; however, in the event that a response is required, Defendant denies the terminology individualized assessment and Defendant denies any remaining allegations of paragraph 214 of the complaint.

215.   Defendants admit that there is generally a 120 day extendable approval period, however the remaining allegations of paragraph 215 of the complaint are denied.

28

216.   Defendants deny the allegations of paragraph 216 of the complaint.

217.   Defendants deny that "C" variances are exclusively within the control of the Zoning Board of Adjustment.  Any remaining allegations of paragraph 217 of the complaint are also denied.

218.   The allegations in paragraph 218 of the complaint are not allegations of fact; however, if a response is required Defendants admit that the applicant must demonstrate in the request for variance relief and has the burden of proof to satisfy the positive and negative criteria to support the grant of a variance.  Any remaining allegations of paragraph 218 of the complaint are denied.

219.   Admitted.

220.   Admitted.

221.   Defendants admit the allegations of paragraph 221 of the complaint that the Chabad building would have a sanctuary, however, the proposed structure's use was not limited to a sanctuary.

222.   Defendants admit the proposed Chabad building would have a social hall but the uses were not limited to a social hall.

223.   Admitted.

29

224.   Admitted.

225.   Defendants admit Chabad filed an appeal of the decision of the Zoning Officer of the Borough of Woodcliff Lake to the Woodcliff Lake Zoning Board of Adjustment to construct a 20,000 square foot house of worship with 88 parking spaces.   The remaining allegations of paragraph 225 are denied.

226.   Defendants deny the a use variance was sought as the use proposed is a conditional use; however, a "D-3" variance was requested.

227.   Admitted.

228.   Admitted.

229.   Denied.

230.   Admitted.

231.   Denied.

232.   Defendants deny that there was good faith modification of the plan to provide zoning compliance or compliance with the goals of the Master Plan of the Borough and deliberately created unnecessary variances in the original application.   The initial application contained nine ("D-3") variances pursuant to N.J.S.A. 40:55B-3.   The applicant also requested ten ("C") variances under N.J.S.A. 40:55B-70(1 and 2).   The original application also requested

30

nine waivers from the requirements for development as set forth in the Site Plan Review Ordinance of the Borough, Chapter 292.  It was Chabad's intention to create numerous variances and waivers so that it could then alter its plans and reduce the number of variances under the guise of being reasonable.  Examples of the creation of variances include, but are not limited to, proposing a larger structure than possible to fit on the property, proposing two monument signs when only one is permitted which were three times the size permitted, proposing fences of six feet in height when the limitation is five feet, proposing a retaining wall of 20 feet in height located one foot from the side yard property line of a residential property and which retaining wall was within one foot of a 24 inch storm sewer main making it virtually impossible to construct the retaining wall  and which would prohibit proper maintenance and replacement or repair of the storm sewer main, proposing inadequate drive aisles in violation of design standards that would not be approved by the fire department, proposing an inadequate buffer from residential uses, proposing a retaining wall with vegetation that would die during northeast winters.  In addition to the foregoing, bulk variances that could have easily been eliminated at the outset were requested as

31

follows: required front yard setback was 50 feet and the applicant proposed 48.5 feet. The set back requirement for the rear yard is 50 feet and the applicant proposed 49 feet. The side yard setback requirement is 50 feet and the applicant proposed 47.3 feet. When the Chabad eliminated these variances, it was not done in good faith, it was part of a pre-conceived plan and attempt to create a false impression while ignoring the goals of the Master Plan and comments of members of the Board.

233. Defendants admit revisions were made to the plan as set forth in paragraph 233 but deny that it was with respect to a use variance application, denies that they were substantive revisions and denies that they were made in good faith.

234. Admitted.

235. Admitted.

236. Defendants admit that the Chabad proposed 73 parking spaces which is deficient. Defendants deny that Chabad proposed 219 seats and that 73 spaces are required. Applicant's original plans provided that 324 people would be in attendance when the facility is used as a sanctuary; however, the revised plans and a schedule prepared by the applicant's architect indicate that the occupancy in the

32

revised plans would now accommodate 383 people with an enlarged sanctuary and social hall. The applicant proposed removable chairs so that the number of seats can change.

237. Defendants admit that additional variances were required including bulk and "C" variances and waivers, however the remaining allegations of paragraph 237 of the complaint are denied.

238. Defendants admit that Chabad modified its plan subsequent to the initial submission, however, the remaining allegations in paragraph 238 of the complaint are denied.

239. Defendants admit that the initial application proposed a retaining wall exceeding 20 feet in height and set back one foot from the property lines of the rear of the property and the side of the property, however, the remaining allegations of paragraph 239 of the complaint are denied.

240. Defendants admit that the plan was revised so that the retaining wall is ten feet from the southerly property line and 2½ feet from the eastern property line. The southern facing wall is two tiers five feet apart. The first tier having a height of nine feet at the highest point and the second tier having an additional 5.5 feet with a five foot fence on top of it total height being 19.5 feet. The

33

remaining allegations of paragraph 240 of the complaint are denied.

241.   Defendants admit that a 30 foot landscaping buffer is required by the Borough Ordinance, however, the remaining allegations of paragraph 241 of the complaint are denied.

242.   Defendant denies that the new plan includes a 21.7 foot buffer but rather provides for a two-tiered retaining wall with a five foot aluminum fence and/or guardrail on top which starts ten feet from the southerly boundary and variance relief is still required.   The remaining allegations of paragraph 242 of the complaint are denied.

243.   Admitted.

244.   Admitted.

245.   Denied.

246.   Defendants admit that in addition to variance requests, the Chabad sought several design waivers.   The remaining allegations of paragraph 246 of the complaint are denied.

247.   Defendants deny the allegations of paragraph 247 of the complaint after presentation of all testimony including expert witnesses for both the Chabad and objectors,

34

Chabad indicated it wanted to make changes to its application and failed to proceed on the application for five months.

248.   Defendants admit the allegations of paragraph 248 of the complaint.   Such fact is another example of the bad faith of the Chabad's application.

249.   Admitted.

250.   Admitted.

251.   Admitted.

252.   Admitted.

253.   Admitted.

254.   Admitted.

255.   Admitted.

256.   Admitted.

257.   Defendant admits that there was revision made to the landscaping plan necessary due to the bad faith exhibited in the initial application. The remaining allegations of paragraph 257 of the complaint are denied.

258.   Defendants admit the allegations of paragraph 258 of the complaint.   This is another example of the bad faith of the Chabad's application.

259.   Admitted.

35

260.   Defendants deny the allegations of paragraph 260 of the complaint. The sanctuary was increased in size and required more parking.

261.   Denied.

262.   Defendants admit that the Chabad proposed multiple services offered each day; however, the remaining allegations of paragraph 262 of the complaint.

263.   Denied.

264.   Denied.

265.   Denied.

266.   Denied.

267.   Denied.

268.   Defendants admit that a house of worship could have religious classes on site, however, the remaining allegations of paragraph 268 of the complaint are denied.

269.   Defendants admit that a house of worship could be used for instruction and morning classes, however, the remaining allegations of paragraph 269 of the complaint are denied.

270.   Defendants admit that a mikvah could be provided, however, the remaining allegations of paragraph 270 of the complaint are denied.

36

271.   Defendants admit that a house of worship could have space for administrative offices, however, the remaining allegations of paragraph 271 of the complaint are denied.

272.   Denied.

273.   Defendants deny the allegations of paragraph 273 of the complaint.  Defendants admit that the application took longer than 120 days provided however, extensions are permitted by law and were granted.

274.   Defendants admit that requests were made to consent to several extensions; however, after a five month hiatus where the applicant failed to appear before the Board and after it had completed its original application, it submitted revised plans and demanded a decision within 120 days.  Chabad's legal counsel took most of the 120 days to present its application and denied the objectors an opportunity to provide expert witness testimony on the revised plans, denied further extensions and imposed a deadline of August 31, 2016 for the Board to render a decision.  Notwithstanding the potential prejudice and violation of case law, a decision by the Board was made as requested by the applicant.

275.   Defendants deny the allegations of paragraph 275 of the complaint.

276.   Defendants deny the allegations of paragraph 276 of the complaint.   Valley Chabad as applicant deliberately extended the time for its application by submitting a plan with the sole intention of revising it at a later date and used the time during its appearance before the Board as work sessions making revisions to the plans that should have been completed at the outset and submitting an application that was unworkable, with design flaws and with no regard for the Master Plan of the Borough.   Chabad extended the time period by presenting one witness per night on most occasions, by failing to appear for meetings, by giving improper notice causing a meeting to be cancelled and by requesting adjournments on at least two occasions.   On the contrary, the Board held special meetings and accommodated the Chabad application by giving it priority at meetings. Furthermore, Chabad did not provide any testimony on its application for five consecutive months.   The zoning application was filed as a predicate to the Chabad's intended litigation.

277.  Defendants admit that hearings were held as set forth in paragraph 277 except on March 29, 2016 as this did not constitute a hearing date but rather an appearance by attorneys only due to the applicant's failure to appear for

three consecutive meetings; hence, there were actually only 17 hearing dates.

278.   Defendants admit that objectors were represented by counsel at several meetings.

279.   Admitted.

280.   Defendants admit that subsequent to the first hearing, plans were revised due to the deficient plans and deficient drive aisles on the applicant's initial application.

281.   Defendants deny the allegations of paragraph 281 of the complaint.  The Chabad's attorney was requested to appear at the March 29, 2016 meeting to explain the applicant's failure to prosecute the application for three consecutive months.  At the meeting counsel for the objectors requested that if major changes were made to the plans that the application should be dismissed and applicant would have to reapply.  At the meeting on June 28, 2016, the Board voted 6 to 1 not to consider the Chabad application a new application even though numerous changes were made in the plan and all the experts had already testified.

282.   Defendants deny that the Chabad was unable to present testimony on March 29, 2016 but rather failed to prosecute the application at that time.  The appearance of

39

March 29, 2016 was to obtain an explanation of the delay by the Chabad.   Chabad appeared represented by counsel and had no witness available to testify.   At that time counsel for the objectors requested that the application be dismissed. Counsel for the Chabad was repeatedly asked for New Jersey Turnpike Authority comments on the project drainage plan which were significant concerns that were raised by the Board.   Finally after multiple attempts to obtain information from Chabad's attorney, counsel for the Board requested a response from the New Jersey Highway Authority.

283.   Defendants deny that N.J.S.A. 40:55D-22b applies as in this matter the New Jersey Turnpike Authority was not an agency as envisioned by the statute but rather a property owner whose property rights were sought by the applicant which included but was not limited to, a construction easements and drainage easements.   All of the remaining allegations of paragraph 283 of the complaint are denied. There was no delay in the application as the Board's attorney obtained a response from the New Jersey Turnpike Authority. When a site plan  lacks sufficient specificity or when the applicant has failed to provide information pertinent to the plan a Board can deny the application.   See <u>Field v. Franklin Tp.</u>, 190 N.J. Super. 326, 332-333 (App. Div. 1983).

40

284.   Defendants admit that Chabad's counsel referred the Board to the New Jersey Statute but deny that the Board's attorney raised the issue as a prerequisite for continued consideration of the Chabad's application.   The remaining allegations of paragraph 284 of the complaint are denied. When the applicant refused to provide a response from the New Jersey Turnpike Authority, the Board attorney obtained a response from the New Jersey Turnpike Authority which issued a letter dated August 19, 2016 stating that the Authority had not granted any approvals related to the applicant's proposed site plan; that the Authority expressed concerns regarding design location with the proposed retaining wall; that drainage calculations were required to be provided for the Authority's review; and that the Authority would not provide authorization to Chabad to utilize the Authority's property for construction or maintenance of the retaining wall.   This response was contrary to testimony given by the Chabad's engineer.

285.   Defendants admit that the Board Chairwoman made statements as set forth on the record.   Defendants deny statements were made contrary to law and any other allegations of paragraph 285 are denied.

41

286.  Defendants deny the allegations of paragraph 286 of the complaint as the application was not delayed and the costs were not increased for the Chabad and the inquiry was properly within the Board's review of the application.

287.  Defendants admit the application was heard on May 24, 2016 and that a Board member questioned the criteria used for trip generation and statements made on the record; however, any remaining allegations of paragraph 287 of the complaint are denied.

288.  Defendants admit the public was allowed to question the traffic engineer including the questions as set forth on the record, however, it is denied that the questions were irrelevant and deny that the questions represented hostility as said questions were related to the detrimental impact to the area and safety issues properly before the Board.

289.  Defendants admit that Rabbi Drizin testified on May 26, 2015 and was asked questions, however, it is denied that the questions were irrelevant.  All of the questions were relevant and related to traffic, safety and impact on the neighborhood particularly because Temple Emanuel is located across the street and services would be conducted at or about the same time with possible traffic congestion,

42

parking issues and pedestrian safety issues.  In addition, if a need is already met in a community, the Board could determine that the proposed use is not inherently beneficial because the need has already been satisfied (see <u>Cox.</u>

290.  Defendants admit the allegations of paragraph 290 of the complaint; however, when the objectors' attorney asked the question an objection was made by counsel for the applicant which objection was sustained and the question was withdrawn.  Defendants do not admit that the plaintiff has the available funds.

291.  Defendants admit that members of the public questioned Chabad's planner at the June 23, 2015 meeting and the transcript and record of the proceeding speaks for itself; however, Defendants deny there is ample width on Overlook Drive to accommodate two lanes of road with safety for those  walking to the Chabad for services.

292.  Defendants deny that it was a year and a half of hearings.  Because of the applicant's delay, improper notice, cancellation of meetings, failure to appear at hearings, and an improper initial application there were 13 months when the matter was heard.  Legal counsel for the Chabad on more than one occasion stated he would consent to necessary extensions so that everyone would have the opportunity to ask questions

43

or present witnesses; however, after multiple attempts at revising deficient plans for relevant issues raised during the course of the hearing and after a hiatus of five months, the Chabad's attorney advised the Board that he would not grant any other extensions and would grant only 120 days or until August 31, 2016 to  vote on the application.   The Chabad then took the greater  part of the 120 days to prevent the objectors from recalling their expert witness on the revised plan and refused to grant a request for a continuance of the hearing, contrary to law.   Notwithstanding the conduct of the Chabad's legal counsel, the Board did conclude the hearing before August 31, 2016.   The remaining allegations of paragraph 292 are denied.

293.   It is admitted that the Board's attorney questioned Chabad's engineer about the flooding issues involving the Musquapsink Brook of which the Chabad's engineer had no knowledge.  Both the Borough Zoning Official as well as the Borough Engineer testified that were well aware of the flooding and erosion issues involving the Musquapsink Brook as stated on the record.   Any remaining allegations of paragraph 293 of the complaint are denied.

294.  It is admitted that members of the public asked questions of the Board's engineer as set forth on the record

44

which speaks for itself; however, it is not admitted that asking questions was irrelevant. All of the remaining allegations of paragraph 294 are denied.

295. Defendants admit that the Board questioned why Rabbi Drizin was not present for testimony on the revised plans and admit that his presence was requested by the Chairwoman of the Board. Any of the remaining allegations of paragraph 295 of the complaint are denied.

296. In response to a request for Rabbi Drizin to return to testify on the revised plans, the Chabad attorney advised that Rabbi Drizin would not be returning and suggested that if the Board wanted him to return, the Board should issue a subpoena. The Board attorney advised that he would issue a subpoena. The Chabad attorney advised that if he could set "conditions" on the appearance of Rabbi Drizin that he might appear which was not acceptable to the Board. Any remaining allegations of paragraph 296 of the complaint are denied.

297. Defendants admit that the Borough Construction Official was called as a witness by a member of the public and was questioned on the topics of the activities of the Chabad and why the Chabad was listed as a house of worship on the Borough's website when its C.O. indicates it's a

45

residence and they are showing films and charging admission and whether that  is allowed in residential homes; however, it is denied that these topics are irrelevant.  Any remaining allegations of paragraph 297 of the complaint are denied.

298.  It is denied that former mayor Joseph LaPaglia was called as a witness by the Board; however, former mayor Joseph LaPaglia was advised that  he could testify if he wanted and did testify as set forth on the record.   Any remaining allegations of paragraph 298 of the complaint are denied.

299.  Defendants admit the allegations of paragraph 299 of the complaint.

300.  Defendants deny that the issue of a nearby orthodox Jewish community in Monsey was legitimately raised by the public.   The people that raised these questions were those who spoke in favor of Chabad and these individuals were not in attendance during prior meetings and were not the objectors who were represented by counsel.

301.  Defendants deny the allegations of paragraph 301 of the complaint and no such statement was made.

302.  Defendants deny the allegations of paragraph 302 of the complaint and no such statement was made.

46

303.   The  Defendants  admit  that  the  Board's  attorney asked  Rabbi  Drizin  questions  as  stated  on  the  record  which speaks  for  itself.   Rabbi  Drizin  was  asked  questions  about other  locations  for  the  Chabad  which  were  relevant  on  issues such  as  burden  of  proof  and  substantial  burden,  particularly since  Chabad  was  called  the  Pascack  Valley  Outreach  Center. Pascack  Valley  is  comprised  of  the  towns  of  Woodcliff  Lake, Emerson,  Hillsdale,  Montvale,  Park  Ridge,  River  Vale, Washington  Township  and  Westwood.   In  addition  Chabad  entered into  a  contract  to  purchase  a  property  one  mile  from  the subject  location  in  the  neighboring  town  of  Hillsdale  and cancelled  the  contract.   At  the  time  of  the  hearing,  this property  was  still  available  and  undeveloped  making  the question  entirely  relevant  as  it  is  proper  for  the  Board  to consider  the  regional  needs  and  opportunities.   Chabad  also failed  to  inquire  about  the  YJCC  property  in  Washington Township  that  became  available  in  2015.

304.  Defendants  admit  that  the  Board's  planner testified  at  the  August  23rd  hearing  as  set  forth  on  the record  but  denies  the  suggested  conclusions  of  such  testimony as  set  forth  in  paragraph  304  of  the  complaint.

305.  Defendants  deny  the  implication  that  the  Chabad witnesses  were  only  given  two  minutes  to  testify  which  is

47

inaccurate and incompletely stated; however, the time for all public comments was limited to two minutes due to the deadline imposed by Chabad's legal counsel.  One witness was given the opportunity to present four minutes of comment when she requested to have the time that was allotted to her husband who had signed the list to make comment, no such other member of the public made such a request and if they had would have been granted the same opportunity.

306.  Defendants deny the allegations of paragraph 306 of the complaint.  Due to the Chabad's attorney's insistence that the application be completed during the summer months after he had taken a five month hiatus on the case and contrary to his statement that everyone would be given a fair opportunity, a member of the public requested in the presence of Chabad's attorney that a statement be read or that he read it at the prior meeting of August 15, 2016 because he would not be available on August 23, 2016.  Chabad's attorney was given the choice of having the member of the public read the statement at the August 16, 2016 meeting or have the statement read by the Board's counsel on August 23, 2016.  Chabad's attorney made no objection to that procedure at that time.  Any remaining allegations of paragraph 306 of the complaint are denied.

48

307.   Defendants deny the allegations of paragraph 307 of the complaint.

308.   Defendants deny the allegations of paragraph 308 of the complaint.

309.   Defendants deny the allegations of paragraph 309 of the complaint as there was no such caution made to the Board.

310.   Defendants admit the allegations of paragraph 310 of the complaint.

311.   Defendants deny the allegations of paragraph 311 of the complaint. A true copy of the resolution is attached hereto.

312.   Defendants admit that the resolution included a finding that the residential character of the neighborhood would be adversely impacted because the proposed use would be highly visible from the roadway and nearby properties. Defendants deny that most of the building is not invisible from the west, admit that to the east there is the Garden State Parkway after which there are residential homes; admit that to the north is a vacant parcel, however, Defendants are without information sufficient to form a belief as to the owner of said property; and admits that to the south there is a property and a large retaining wall that will be visible

49

and further admit that to a limited extent the property is used as an egg farm, however, it is denied that the owner does not object to the use inasmuch as upon information and belief the owner may be ill and could not appear and raise any objection or approval of the application. Any remaining allegations of paragraph 312 of the complaint are denied.

313. Defendants admit that the resolution included a finding that there would be substantial and significant adverse impact to the surrounding residential neighborhood based upon inadequate parking and a development that is obtrusive. Defendants deny that the parking proposed by Chabad complies with the code. According to code Chabad would be short 54 parking spaces (staff would increase the parking requirements and add to the deficiency of parking spaces). Defendants deny that the applicant offered any credible testimony that attendance could be staggered, services held at different times or would be held offsite. Any remaining allegations of paragraph 313 of the complaint are denied.

314. Defendants admit that the resolution included a finding that without sufficient onsite parking there will be an overflow of parking into the residential neighborhoods most notably on Mill Road Extension and properties to the

50

west.   Defendants  admit  that  the  borough  has  prohibited
parking  on  Overlook  Drive  which  has  limited  shoulders  and  no
sidewalks  but  denies  that  overflow  situations  would  be  a  rare
occurrence  or  would  occur  at  all.   Any  remaining  allegations
of  paragraph  314  of  the  complaint  are  denied.

315.  Defendants  admit  that  the  resolution  included  a
finding  that  there  are  numerous  pedestrian  hazards  along
Overlook  Drive,  which  has  a  40  mile  per  hour  speed  limit  with
insufficient  lighting.   Defendants  are  without  information
sufficient  to  form  a  belief  as  to  whether  or  not  some  members
may  have  walked  to  services  at  the  Chabad  for  many  years
without  incident.   Defendants  admit  that  pedestrian  traffic
would  increase  during  high  holy  days,  however,  any  and  all
other  remaining  allegations  of  paragraph  315  of  the  complaint
are  denied.

316.  Defendants  admit  that  the  resolution  included  a
finding  that  there  is  an  issue  of  pedestrian  safety  due  to
the  fact  that  there  are  no  sidewalks  on  Overlook  Drive  and
those  wishing  to  walk  to  the  subject  site  would  encounter
insufficient  shoulders  to  walk,  however,  the  remaining
allegations  of  paragraph  316  of  the  complaint  are  denied.

317.  Defendants  admit  the  resolution  included  a
finding  that  the  proposed  Chabad  house  is  also  likely  to

cause additional erosion and flooding of the Musquapsink
Brook which has been deemed a flood hazard area by the State
of New Jersey.  Defendants deny that the Board Engineer
testified several times that the Chabad's application met all
drainage requirements, however it is submitted that the Board
Engineer testified that flooding and erosion has existed for
years and in other municipalities.  The Garden State Parkway
has water runoff that flows into the Musquapsink Brook and
there have been resident complaints about flooding.  The
Board Engineer testified that although the rate of water
coming from the site would decrease, the quantity of water
coming off the site would increase due to the excessive
impervious coverage.  In addition the Construction Code
Official testified about flooding and erosion problems within
the Borough and other communities downstream.  Defendants
deny that the Chabad's use did not have any adverse impact
and any remaining allegations of paragraph 317 of the
complaint are denied.

318.  Defendants admit that the Board found that the
submitted drainage plans would contribute to known flooding
conditions based upon the testimony of the Borough Engineer
and the Construction Code Official.  All remaining
allegations of paragraph 318 of the complaint are denied.

52

319.   Defendants admit that the resolution included a finding that there are other larger available properties for the Chabad in the Borough and surrounding municipalities; however, the remaining allegations of paragraph 319 of the complaint are denied.

320.   Defendants deny the allegations of paragraph 320 of the complaint.

321.   Defendants deny that the property located at 291 Chestnut Ridge Road is 1.2 acres in size as the listing for the property indicates that it is 3.4 acres in size.   All remaining allegations of paragraph 321 of the complaint are denied.

322.   Defendants admit that the Board stated that a lot at 1220 Brookview Drive was available for Chabad and admit that there is no such address in Woodcliff Lake which was a typographical error in the address.   The address for this two acre site is 122 Brookview Drive.

323.   Defendants deny that the location at 250 Pascack Road was "suggested" by the Board but admits that it is mentioned in the resolution.   Any remaining allegations of paragraph 323 of the complaint are denied.

324.   Denied.

53

325.   After   reasonable   investigation,   the   defendants are  without  sufficient  information  to  admit  or  deny  this allegation.

326.   Defendants  deny  the  allegations  of  paragraph  326 of  the  complaint  as  there  is  an  undeveloped  piece  of  the property  on  Pascack  Road  that  has  for  a  number  of  years remained undeveloped.

327.   Defendants  admit  that  the  property  at  27  Pascack Road  was  mentioned  by  the  Board  and  is  without  sufficient information  to  form  a  belief  as  to  the  frontage  of  the  lot, however,  the  property  is  listed  as  a  four  acre  site  that  may be  available.   Any  remaining  allegations  of  paragraph  327  of the  complaint  are  denied.

328.   Defendants  deny  the  allegations  of  paragraph  328 of  the  complaint.   The  Borough  of  Woodcliff  Lake  is  3.41 square  miles  with  a  population  of  approximately  5,700  to 5,900  people.   The  community  can  be  described  as  fully developed  so  that  it  is  probable  that  within  all  zones,  an interested  party  must  either  combine  lots,  demolish  existing buildings  or  seek  an  opportunity  for  development.    In addition,  any  development  must  have  appropriate  space  for parking  based  upon  the  size  of  the  structure.    Chabad,  has cancelled  all  contracts  to  purchase  property  including  a

previous property located in Hillsdale which upon information and belief is over three acres and to this day remains undeveloped. This property is within one mile of the Chabad location and within the Pascack Valley area which is the Chabad's desired location (Valley Chabad was formerly known as the Pascack Valley Outreach Center). Also located within the Pascack Valley area is the YJCC property located in Washington Township which became available due to the cessation of operation of said facility in 2015.

329.   Defendants admit that the YJCC property in Washington Township was mentioned during the hearing as a property within the Pascack Valley area available to the Chabad but deny that mention of a property within the area where Chabad wishes to locate is hostility. Defendants also contend that evidence of suitable sites in the area are relevant to whether or not there is a substantial burden being placed on Chabad.

330.   Defendants deny the allegations of paragraph 330 of the complaint. The Board of Adjustment resolution specifically considered whether any conditions could be imposed to alleviate the detrimental impact of the application, however, the Board found that it was unrealistic and unlikely that occupancy can or would be limited to such

numbers based upon the testimony of Rabbi Drizin and the failure to abide by prior occupancy limits imposed on the property and the ineffectiveness of fines when limitations were violated by the Chabad.   In addition, there is no condition that could remedy the obtrusive structure and retaining walls.

331.  Defendants admit that the Chabad proposed as a condition a 219 person occupancy limit and that the Board rejected this condition not only because such limitation would not satisfy the need for the Chabad but based upon the fact that Chabad had modified its plans so that the sanctuary could accommodate 383 people and proposed the use of movable chairs and folding chairs to accommodate such capacity. Rabbi Drizin further testified that attempts at limiting occupancy have been unsuccessful in the past.  Any remaining allegations of paragraph 331 of the complaint are denied.

332.  Defendants admit that the resolution stated that variance relief was still required as the parking is 54 spaces less than what is required.  Defendants admit that the applicant proposed reducing the number of seats to 219 which proposal is unrealistic and inaccurate because of the use of removable seating.  It is admitted that the applicant propose

56

73 spaces, however, all remaining allegations in paragraph 332 of the complaint are denied.

333. Defendants admit that the Borough Code requirement is one space for every three seats, however, Defendants deny that 73 parking spaces complies with the Borough Code and all remaining allegations of paragraph 333 of the complaint are denied.

334. Defendants deny the allegations of paragraph 334 of the complaint.

335. Defendants deny the allegations of paragraph 335 of the complaint.

336. Defendants admit that the Chabad failed to comply with the request to produce a rendering of the retaining wall system and landscaping as well as information with regard to drainage from the Garden State Parkway and the New Jersey Turnpike Authority which are relevant on the failure of the applicant to meet its burden of proof. All the remaining allegations of paragraph 336 of the complaint are denied.

337. Defendants deny the allegations of paragraph 337 of the complaint.

338. Defendants admit that the Board determined that the Chabad's drainage plan not only requires the consent and

57

approval of the New Jersey Turnpike Authority but also drainage easements and construction easements for which it has not obtained for the approval.

339. Defendants deny the allegations of paragraph 339 of the complaint and further deny that N.J.S.A. 40:55D-22(b) pertains to this application as the Chabad was not seeking approval pursuant to said statute but rather property rights by way of drainage easements and construction easements not contemplated by said statute.

340. Defendants admit the allegations of paragraph 340 as set forth in the letter issued by the New Jersey Turnpike Authority.

341. Defendants admit that the proposed wall is not on property owned by the Garden State Parkway, however, it denies that no such approval is required by the adjacent property owner and upon information and belief a wall cannot be constructed without obtaining a construction easement from the adjacent property owner.

342. Admitted.

343. Denied.

344. Admitted.

345. Defendants admit that there was testimony with regard to inadequate snow removal at the time that could

58

reduce the number of parking spaces, however, no specific testimony is cited and any remaining allegations of paragraph 345 of the complaint are denied.

346.   Denied.

347.   Denied.

348.   Denied.

349.   Defendants deny the allegations of paragraph 349 of the complaint.  The only residents that mentioned "Monsey, New York" or Lubovitch were supporters of the Chabad.

350.   Defendants deny the allegations of paragraph 350 of the complaint and further denies that the Chabad has funds reasonably available for a $5 million cost of construction or that any estimate for same has been obtained.

351.   Denied.

352.   This is a legal conclusion, requiring no response.

353.   Admitted.

354.   After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

355.   Admitted.

356.   Denied to the extent the plaintiffs mean to imply that the inspections constituted a form of harassment.

59

357.  Denied to the extent that the plaintiffs mean to imply that the fine is an example of harassment.

358.  It is admitted that an inspection was conducted but denied it was a form of harassment.

359.  After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

360.  Admitted.

361.  Admitted.

362.  Admitted.

363.  Admitted but denied to the extent the plaintiffs mean to imply that the remark had anything to do with the plaintiffs.

364.  Denied.

365.  Denied.

366.  It is admitted that the police were called, but this was in response to citizen complaints.

367.  Denied.

368.  Admitted.

369.  Admitted.

370.  Denied.

371.  Denied.

372.  Denied.

373. Denied.

374. Denied.

375. Denied.

376. To the extent the plaintiffs mean to imply in this paragraph that the attendance at the meeting is evidence of antiemetic animus, the allegation is denied.

377. It is admitted that the tweet was sent but denied it referred to the plaintiffs.

378. Denied.

379. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

380. Admitted.

381. Admitted.

382. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

383. Denied.

384. Admitted.

385. Admitted.

386. Admitted.

387. Admitted.

388. Admitted.

389. After reasonable investigation, the defendants are without sufficient information to admit or deny this allegation.

390. Admitted.

391. Admitted.

392. Admitted.

393. Denied. Inspections are required for all rental properties.

394. Denied. Inspections are required for all rental properties.

395. It is admitted that Ester Orenstein allowed Borough officials access to her home. The defendants have no knowledge concerning Ester Orenstein's prior knowledge inspections.

396. Admitted, though this was arranged with Mr. Orenstein.

397. Denied.

398. Admitted.

399. Denied. Mayor Rendo denied and continues to deny that the defendants have violated the Religious Land Use and Institutionalized Persons Act.

400. Denied.

62

401.   This   is   a   legal   conclusion,   requiring   no response.

402.   This   is   a   legal   conclusion,   requiring   no response.

403.   Denied.

404.   Denied.

405.   Denied.

406.   It is admitted that the plaintiffs claimed that the defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA). It is denied that the defendants violated the statute.

407.   Denied.

408.   Denied.

409.   Denied.

410.   Denied.

411.   Denied.

<u>**COUNT ONE**</u>

412.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

413.   Denied.

<u>**COUNT TWO**</u>

414.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

415.   Denied.

## COUNT THREE

416.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

417.   Denied.

## COUNT FOUR

418.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

419.   Denied.

## COUNT FIVE

420.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

421.   Denied.

## COUNT SIX

422.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

423.   Denied.

## COUNT SEVEN

424.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

425.   Denied.

426.   Denied.

LEGAL/108424470.v1
FOLDER 4 – PLEADINGS / ANSWER

## COUNT EIGHT

427.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

428.   Denied.

## COUNT NINE

429.   The answers to the allegations of the preceding paragraphs are repeated as set forth fully at length herein.

430.   Denied.

431.   Denied.

432.   Denied.

WHEREFORE, the defendants demand judgment dismissing the Complaint and awarding the defendants counsel fees and costs of suit.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint is barred by the applicable Statute of Limitations.

### Second Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Third Affirmative Defense

Plaintiffs have shown no valid civil rights violations and therefore have failed to meet the statutory requirements of the Religious Land Use and Institutionalized Persons Act.

**<u>Fourth Affirmative Defense</u>**

The plaintiffs have failed to mitigate their damages.

**<u>Fifth Affirmative Defense</u>**

The claims against the defendants are barred by the applicable provisions of the New Jersey Tort Claims Act, <u>N.J.S.</u> 59:9-1 et seq.

**<u>LOCAL RULE 11.2 CERTIFICATION</u>**

Pursuant to Local Rule of Civil Procedure 11.2, I hereby certify that the matter in controversy is not currently the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**<u>TRIAL COUNSEL DESIGNATION</u>**

Howard B. Mankoff is hereby designated as trial counsel for defendants Borough of Woodcliff Lake, N.J. and Zoning Board of Adjustment of the Borough of Woodcliff Lake, N.J., Carlos Rendo, individually and in his official capacity as Mayor of the Borough of Woodcliff Lake, and Paul Bechtel in his official capacity as Property Maintenance Officer of the Borough of Woodcliff Lake.

66

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
**Attorneys for Defendants,**
Borough of Woodcliff Lake,
N.J. and Zoning Board of
Adjustment of the Borough of
Woodcliff Lake, N.J., Carlos
Rendo, individually and in
his official capacity as
Mayor of the Borough of
Woodcliff Lake, and Paul
Bechtel in his official
capacity as Property
Maintenance Officer of the
Borough of Woodcliff Lake


By: **/s/ Howard B. Mankoff**
       HOWARD B. MANKOFF, ESQ.


Dated:  January 6, 2017

67