IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**VALLEY CHABAD, ET AL**.

    Plaintiffs,

vs.                                                                 Civ. No. 2:16-CV-08097 JLL

**BOROUGH OF WOODCLIFF LAKE,
ET AL**.

    Defendants.

**STIPULATION AND ORDER REGARDING DISCOVERY**

    Plaintiffs and Defendants (collectively "Parties") conferred pursuant to Federal Rule of Civil Procedure 26(f) and agree on the standards for discovery, mutually seeking to reduce the time, expense and other burdens of identifying, locating, preserving, securing, collecting, preparing, reviewing and producing facts, information and materials for the purpose of producing/obtaining evidence, especially as it relates to electronically stored information ("ESI"). Therefore, the Parties enter into this Stipulation to govern discovery obligations in this action.

    The Parties stipulate to the following:

1) **Cooperation**

    The Parties are committed to act in good faith throughout this matter and meet and confer on matters to resolve disputes in the spirit of cooperation**.**

2) **Definitions**

    **The Parties agree to define the below terms** for this litigation as:

    a)    <u>Application</u> means a collection of one or more related software programs that

enables a user to enter, store, view, modify or extract information from files or databases. This term is commonly interchangeable with "program" and/or "software".

    b)    <u>Archival Data</u> means information that is not directly accessible to the user of a computer system but that the organization maintains for long-term storage and recordkeeping purposes.  See also, "Backup".

    c)    <u>Backup</u> means a copy of data created as a precaution against the loss or damage of original data in the event of a disaster or other circumstance limiting access to the live original data, whether created onsite, offline, remotely, or online.

    d)    <u>Backup Recycling</u> means the process whereby an organization, entity or individual overwrites some or all of the previously retained backup data originally retained for a fixed or predetermined period in the ordinary course of business unless subject to a legal hold or other law or mandate requiring retention without recycling.

    e)    <u>Bates Number</u> means a tracking number assigned to each page of each document in the production set.

    f)    <u>Custodian</u> means the person having administrative control of a document or electronic file.

    g)    <u>Deduplication (Deduping)</u> means the process of comparing electronic records based on their characteristics and removing duplicate records from the data set.

    h)    <u>Document family</u> means a group of related documents that are considered collectively as a group such as an email with attachments – the email being the "parent" and the attachments "children".  Paper documents that are physically connected by binding, folders, or other cohesive physical or logical groupings may manually be deemed a document family if scanned and categorized as such.  For example, a folder title or binder

cover becomes a "parent" and materials contained within the folder or binder its "children".

    i)    <u>Draft document</u> means a preliminary version of a record before it has been completed, finalized, accepted, validated or filed.  Such records include working files and notes.  Records and information management policies may provide for the destruction of draft records upon finalization, acceptance, validation or filing of the final or official version of the record, unless subject to a legal hold or other law or mandate requiring retention in lieu of destruction.

    j)    <u>Data File</u> means a consolidated file containing all of the fielded information that will be loaded into a database.  Data files must contain a header row in the first row identifying the field names. For more information about data files, see "metadata" below.

    k)    <u>Effective date</u> means the date that all of the Parties execute this Stipulation.

    l)    <u>Extracted text</u> means collecting text from files that include text in their original native file format or after generating text files from Optical Character Recognition (OCR) software for the purpose of indexing the text into an application for search and retrieval purposes.

    m)    <u>Image</u> means a tangible or electronic representation of a graphical depiction, picture, scanned file or other visual that has been digitally created or digitized without an accompanying text file.  Examples of image file formats include non-searchable: Tagged Image File (.TIF or .TIFF), Bitmap Image File (.BMP), JPEG Image File (.JPG), Portable Network Graphic (.PNG).

    i)    <u>Image cross reference file</u> means a file (.LOG or .OPT) that links the images to the database records by using an ImageID numbering system that corresponds to Beginning Bates Numbering of records being produced.  The image cross reference file should be a

comma-delimited file (.CSV) consisting of up to seven (7) fields, including: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount (leaving DocumentBreak, FolderBreak, BoxBreak and PageCount empty if not readily available).

j)   <u>Metadata</u> means fielded information about a particular data set that describes how, when and by whom data was collected, created, accessed, modified and how it was formatted. Some metadata, such as dates and sizes, can easily be made available, whereas system and other metadata hidden or embedded might be unavailable to a non-technical computer user.  Digitized paper or other scanned documents also will not contain metadata unless manually captured by visual inspection (i.e., bibliographic coding).

k)   <u>Native File Format</u> means electronically generated files created in a given software application typically used in the ordinary course of business (e.g., a Word document originated from Microsoft Word; a PowerPoint slideshow originated from Microsoft PowerPoint; an email might have been generated from Outlook or Lotus Notes or web mail; an Excel spreadsheet originated from Microsoft Excel; etc).

l)   <u>Not reasonably accessible</u> means ESI from a source(s) that a Party identifies as not reasonably accessible because of undue burden or cost.

m)   <u>Optical Character Recognition ("OCR")</u> means utilizing software which takes data from a digitized scanned paper document or non-searchable image file and attempts to layer an extractable text file onto or accompanying that document.

n)   <u>Party</u> means any of the parties to this action.

o)   <u>Production</u> means the delivery of data and/or information in response to an interrogatory, subpoena or discovery order or similar legal process.

p)      <u>Production Media</u> means the physical material or portal used to store electronic discovery data.  Media typically is provided to between/among parties by way of hard drives, thumb drives, computer disks, CDs, DVDs, or via a secure File Transfer Protocol (FTP) website.

q)      <u>Retention policy</u> means a policy established by a Party's official decision-making authority responsible for temporal oversight and management of documents, assets, ESI or other records subject to retention and disposition policies and procedures that govern that program, including the identification, classification, handling and disposition of the organization's records throughout their retention life-cycle.

r)      <u>Webmail</u> means email service that is provided through a website.

s)      <u>Web Site</u> means a collection of Uniform Resource Indicators (URIs, including URLs (Uniform Resource Locators)) in the control of one administrative entity.  Web sites may come from different URIs, (e.g., FTP sites, telnet sites, and World Wide Web sites).

t)      <u>World Wide Web</u> (WWW) means a collection of computers on the internet which use HTML-capable software (Internet Explorer, Google, etc) to exchange data.  Data exchange on the WWW is characterized by easy-to-use graphical interfaces, hypertext links, images and sound.

**3) Preservation**

In accordance with the Federal Rules of Civil Procedure ("FRCP"), the Federal Rules of Evidence ("FRE"), and the relevant controlling principles of law, the Parties having discussed their preservation obligations and needs pursuant to FRCP(26)(f), hereby agree to preserve discoverable information in consideration of:

a)  whether such discovery is relevant to a claim or defense and is proportional to the

        importance of the issues at stake in this action;

b) the costs of discovery in light of the amount in controversy;

c) the Parties' relative access to relevant information;

d) the Parties' resources;

e) the importance of the discovery in resolving the issues; and

f) whether the burden or expense of the proposed discovery outweighs its likely benefit.

    The Parties agree that preservation does not by itself define the scope of discovery, especially as it relates to privilege, sensitive, and/or non-responsive materials unrelated to this action.  No preservation effort by the Parties shall be deemed a waiver of any claim of privilege.

**4)  Limitations on Obligations to Preserve**

    Parties agree to forego producing the following unless there is a question of spoliation, whereby Parties shall meet and confer to modify the scope of the below referenced limitations:

a) Email delivery or read receipts;

b) temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

c) server, system or network logs;

d) corrupt or unreadable files (unless password protected and the password is readily accessible);

e) system or executive files (e.g., .exe, .dll);

f) data from a smartphone device or other cell phone where, based on the producing party's standard practices, believes the smartphone device or other cell phone information is expected to be duplicative of some other sources being produced (e.g., other emails from webmail or a network server);

g) log data from photocopiers or fax machines;

h) materials retained primarily for backup or disaster recovery purposes unless relevant ESI exists *only* on a Party's Backup data/system, whereby preservation is required and the Parties will meet and confer about how to produce such information.  If the Parties cannot agree on how to handle such Backup data, the Parties will seek a ruling from the Court thereon;

i) Voicemails and voice mail logs; and

j) any other file types subsequently agreed upon by the Parties.

5) **Production Formats**

As part of Parties ongoing cooperation, the following general considerations will apply to each production (whether offered on a rolling basis or otherwise):

a) *Native File Production*: In an effort to keep costs down and forego having to convert original ESI into image based files for linear review, the default for all productions shall be to produce in native file format, renaming native files for its corresponding Beginning Bates Number.  Native productions shall also include other load files such as metadata files, text, images, log file, or any other requested content necessary to associate records in a specific centralized document review repository, more fully described below in "Production Specifications". Note that Adobe PDF files do not constitute native files unless originally created in Adobe.

b) *Redactions*: If a document is redacted, native files will be converted to 300 DPI Group IV single page TIFF files.  Color images will be converted to JPEG format. Redacted text files should accompany corresponding redacted images.

c) *Document Family Group Integrity*: Each Parent and each child shall be produced as

separate records, with each child/children subsequently following its/their associated parent file in order of review and in Bates numbering order.

d) *Web Sites*: Social media or other web content will be produced with responsive text, photos, videos, or other relevant content, and include the date the content was posted or edited in a readily accessible format (e.g., HTML, Microsoft Word, PDF, etc). If visual formatting of web pages are unavailable, screenshots capturing verifying date/time stamps and complete URL Web Site information will be an acceptable substitution, unless full Web Sites/Pages are necessary to understand or use the content produced.

e) *Multi-media files*: Audio and/or video should be produced separately, even if unviewable by a Parties review platform of choice.

f) *Database files*: Databases such as Microsoft Access files or other records with a .DB file extension should be produced separately for review in their respective native application where readily available.

i) *Decryption/Password Handling*: The Parties agree to remove encryption or password protection wherever feasible and provide passwords or assistance needed to open encrypted files identified in any production volume.

j) *Uncommon Proprietary Files*: Parties agree to meet and confer regarding the production of files that would require the use of proprietary software not commonly found in the workplace and explore other format options or ways to review these files.

**6)    Production Specifications**

The following field names and definitions apply to the Parties for all productions and should be included with header information matching the below Field Names for any load file produced:

| Field Name | Definition |
|---|---|
| **Beg_Bates** | First Bates number for the first page of a native file document/email or converted TIFF or JPEG image. |
| **End_Bates** | Last Bates number for the last page of a native file document/email or converted TIFF or JPEG image. |
| **AttachRange** | Only for document families, provide Bates range starting with the first page of the parent document through the last page of the last attachment or embedded file. Leave this field blank if there is no document family. |
| **Custodian** | The name of the person who had primary control over the location from which the document was collected.<br><br>Email: Mailbox where the email resided at time of collection.<br><br>Native: Name of the individual or department from whose files the document originated. |
| **From** | When referencing emails, "From" indicates the "Sender" field.<br>When referencing natives, "From" indicates the Author field. |
| **To** | When referencing emails, "To" indicates the "Recipient(s)" field |
| **CC** | When referencing emails, "CC" indicates the "Carbon-Copy Recipient(s)" field. |
| **BCC** | When referencing emails, "BCC" indicates the "Blind Carbon-Copy Recipient(s)" field. |
| **Subject** | When referencing emails, "Subject" indicates the subject line.<br>When referencing natives, "Subject" indicates the Title of the document (if available). |
| **DateSent** | When referencing email, "DateSent" indicates the date the email was sent (format should follow MM/DD/YYYY) |
| **TimeSent** | When referencing email, "TimeSent" indicates the time the email was sent (format should follow HH:MM:SS) |
| **MD5Hash** | The MD5 hash value calculated when the file was collected or processed. |
| **Path** | When referencing emails, this field will be empty.<br>When referencing natives, the "Path" indicates where the native file document was stored including original file name at time of collection. |
| **Link** | Hyperlink to the email or native file document, which is named per the Begin_Bates number. |
| **FileName** | When referencing emails, this field will be empty.<br>When referencing natives, the name of the original native file, including file extension. |
| **FileExt** | The file type extension representing each email or native file being produced |

a. Plaintiffs' Load File & Production Format Requirements:

   i. Defendants' productions shall be delivered to Plaintiff's counsel for

use in Nextpoint, which will include:

1. An image load/cross reference file containing only image document boundaries (i.e., document and page breaks) should be provided with each production in either a DII, LFP, of LOG format. Please note that Nextpoint does not support DII Tokens for alternate metadata corresponding to Image, Text, or Native files. A separately formatted metadata load file is required.

2. A data load file should be provided with each production. The file should be compatible with Nextpoint (I.e. DAT, CSV, or TXT file type). Extracted text and/or OCR text should NOT be embedded in the DAT/CSV/TXT file, but should rather be provided as a separate, document-level text file. Document-level text file names should contain the beginning Bates number information of the document. If a document is provided in native format with a placeholder tiff, (e.g., database files) the text file should contain the extracted text of the native file. Where there are redactions to the text of a document, that text should likewise be redacted in the text file.

b. Defendants' Load File Production Format Requirements:

  i. Plaintiffs' productions shall be delivered to Defendants' counsel for use in Summation, which will include:

   a. An image cross-reference load file (i.e., .DII or .OPT);

   2. A separate data load file should also be provided for each

        production as .DAT, .CSV or .TXT file type. The data file shall contain all of the fielded information that will be loaded into Summation and the first line of the data file must be a header row identifying the field names provided;

3. A separate folder for Text and Image files should be created that groups both text and images together per production Volume. And, all extracted or page level OCR should be ANSI or Unicode (UTF-8) with a .txt extension; and

4. A separate folder for native files.

    a) <u>Bates Numbering</u>

The Parties agree that productions must be endorsed with sequential Bates numbers in the lower right corner of each image. Bates numbers shall not obliterate, conceal, or interfere with any substantive information on each endorsed document. The Parties will follow the following naming conventions:

    Images Files = [Beg_Bates Number].tif or [Beg_Bates Number].jpg.

    Native Files = [Beg_Bates Number].ext.

    Text File = [Beg_Bates Number].txt.

The Parties will use the following Bates Number format for all productions: "XX#####" or "XXX#####" where "XX" or "XXX" represents the short character abbreviation for the producing Party and ##### represents the 5 digit tracking number assigned to each page of each document in a production set (or in the case of native files, the first bates number of each document and a cross-reference file or other load file associating it to each page of each document in a production set). Examples are listed below.

    Plaintiffs = VC00001

    Defendant Borough of Woodcliff Lake = WCL00001

    Defendant Borough of Woodcliff Lake Zoning Board of Adjustment = ZBA00001

    Defendant Carlos Rendo = REN00001

  The Parties will sequentially Bates Number each document in a document family and provide an attachment range for all parent and child relationships encompassing the document family group.

  b) <u>Form of Production for Paper Documents</u>

  The Parties agree to scan hard copy documents in black & white unless color scanning is necessary to understand or use the information contained in the image (e.g., hard copies with redlines, color-coded graphs or charts, printed photographs, etc.).  To the extent possible and on a going-forward basis, the Parties agree to produce paper documents in a manner that accurately represents the organization of the original paper document. Each page of a hard copy document will be scanned as an image.  If a document has multiple pages, the scanned images of each page will be produced in the order maintained in the original document.  Blank post-it notes or tabs will be ignored.

  The relationship of documents in a document collection will be scanned to capture them as a designated "family document" (e.g., cover letter and enclosures; binder containing multiple tabbed documents; file folder containing multiple documents with staples, clips or other physical breaks).

  c) <u>Production Media</u>

Parties will use Production Media most appropriate to the size of the production. Parties

agree to label each piece of Production Media with: (1) case number, (2) producing Party's name; (3) production date; (4) production volume(s); and (5) bates ranges per volume. In addition, the Parties will include an accompanying letter reiterating the aforementioned items, along with a list of custodians, identifying the bates range for each custodian (encompassing the first bates number through the last bates number per custodian for each production volume).

**7) Scope of Privilege and Logging**

Pursuant to FRE 502(d), the production of a privileged or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. The Parties agree that for each document withheld on the basis of an asserted claim of privilege or protection, the asserting Party must produce a log pursuant to FRCP 26(b)(5)(A).

Notwithstanding the preceding and in an effort to reduce the time required to prepare a privilege log, the Parties agree not to expressly log: (1) communications solely between attorneys or staff of attorneys and their clients; (2) attorney work product; or (3) any communication between a Party's attorney and any witness required to provide a report under FRCP 26(a)(2)(B), except that the Parties will disclose communications made discoverable by FRCP 26(b)(4)(C).

a) <u>Privilege Log Specifications</u>

The Parties agree to separately identify and log embedded email and email attachments and provide each log entry with corresponding Privilege Bates Numbers for each page of each document being withheld. Furthermore, the Parties agree to include the following information sufficient to establish the basis for each of the elements of the asserted privilege or protection for each item withheld:

i) The type of document for which the privilege is claimed.

      ii) The name and designation or capacity of the provider/author of the document.

      iii) The name and designation or capacity of each recipient.

      iv) The date of the information or the date on which the document was prepared, sent, or shared.

      v) The title and/or description of the information or document.

      vi) The privilege claimed.

**8) Clawback Protections for Inadvertent Production(s) of Privilege or Protected Materials**

The Parties agree that an erroneous disclosure of information contained within a production that should have been withheld because it is protected by attorney-client privilege, work product protection, or governmental privileges shall be considered to retain its privilege or other protective status and not constitute a waiver thereof so long as: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder takes reasonable steps to rectify the error - asking for its return and/or destruction in a reasonable time of discovering the inadvertent disclosure. "Reasonable steps" in this context shall mean providing written notification to the opposing party or parties that an inadvertent production was made within 14 days of discovering the erroneous disclosure. Failure to make a written request within the reasonable timeframe waives all claims of privilege or protection. This waiver only applies to the specific inadvertently produced item(s) referenced with specificity (including bates number references) and does not operate to waive privilege as to any other production materials.

When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party. If copies of

inadvertently produced materials are captured on the receiving Party's Backup System, the receiving Party will over- write those copies according to its established procedures.

If the receiving Party must destroy or delete production media (*e.g.,* CD) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court.

**9) Duty to Supplement Discovery Responses**

Each Party must supplement or correct its disclosure or response in compliance with FRCP 26(e).

**10) Costs of Document Production**

Each Party shall bear the costs of producing its own relevant, non-privileged materials and privilege logs.

**11) Requirement to Confer**

The Parties will confer in a good faith to attempt to resolve disputes before filing any motion about the terms of this Stipulation and Order, compliance with this Stipulation and Order.

**12) Miscellaneous**

The Stipulation may be executed in counterparts and may not be enlarged, modified or altered except in a writing signed by each Party.  None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a

discovery request; rather, such time frames shall be governed by the FRCP. The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters not addressed herein.

Agreed to by counsel for the Parties:

For the Plaintiffs:

*Sieglinde Rath*

Sieglinde K. Rath
Robert L. Greene, *admitted pro hac vice*
Roman P. Storzer, Esq., *admitted pro hac vice*
Storzer & Associates, P.C.
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036

Date: _____

For the Defendants:   /s/ Howard B. Mankoff
Marshall, Dennehey, Warner, Coleman & Goggin
425 Eagle Rock Avenue
Suite 302
Roseland, New Jersey 07068

Date: _____

IT IS **SO ORDERED** this _____ day of _____, 2018

_____
JOSE LINARES
UNITED STATES DISTRICT JUDGE