**KROVATIN KLINGEMAN LLC**
Henry E. Klingeman, Esq.
Helen A. Nau, Esq.
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
*Attorneys for Defendants*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VALLEY CHABAD, INC. , et al.** | |
| Plaintiff, | |
| v. | **Civil Action No. 16-8087 (JLL)** |
| **BOROUGH OF WOODCLIFF LAKE, NJ et al.** | |
| Defendants. | |
| | |
| **UNITED STATES OF AMERICA** | |
| Plaintiff, | |
| v. | **Civil Action No. 18-10511 (JLL)** (Consolidated Action) |
| **BOROUGH OF WOODCLIFF LAKE and WOODCLIFF LAKE ZONING BOARD OF ADJUSTMENT** | **ANSWER ON BEHALF OF DEFENDANTS** |
| Defendants. | |

Defendants Borough of Woodcliff Lake and Woodcliff Lake Zoning Board of Adjustment ("Defendants") by way of an Answer to the Complaint of the United States of America, hereby say:

## **INTRODUCTION**

1. Paragraph 1 sets forth the Government's description of the action, to which no response is required. To the extent the Government asserts that there are facts to support the cause of action, Defendants deny the allegations.

2. Denied.

## **JURISDICTION AND VENUE**

3. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

4. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

## **PARTIES**

5. Admitted.

6. Defendants admit the allegations contained in paragraph 6, except they deny that the council serves all legislative functions in the Borough.

7. Denied.

8. Defendant admits that the Woodcliff Lake Zoning Board of Adjustment is organized pursuant to the New Jersey Municipal Land Use Law and has a seven (7) member Board that in part rules on variance applications and interpretations of the Municipal Code and hears appeals from enforcement of the Zoning Code. Defendant deny the remaining allegations of paragraph 8.

9. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

10.	Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

## ALLEGED FACTS

### Valley Chabad

11.	Defendants are without information sufficient to form a belief as to the truth of the allegation as to whether Valley Chabad is a non-profit entity incorporated and existing under the laws of the State of New Jersey. The remaining allegations are denied as conclusions of law to which no response is required.

12.	Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12.

13.	Denied. Valley Chabad was formerly known as the Pascack Valley Outreach Center. Woodcliff Lake is one town in the Pascack Valley.

14.	Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14.

15.	Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.

16.	Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16.

17.	Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

18.	Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18.

19. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

**The Subject Property at 100 Overlook Drive**

20. Admitted.

21. Defendants admit the Garden State Parkway borders 100 Overlook Drive to the east, and to the west of the property sits private homes and Temple Emanuel, and that the northern edge of the property consists of a small vacant area, and that the property's southern edge borders other residentially zoned property. Defendants deny the remaining allegations of paragraph 21.

22. Defendants admit that Valley Chabad has used the house located at 100 Overlook Drive, which is approximately 3,194 square feet and one-and-a-half stories tall. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22.

23. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23.

24. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24.

25. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26. Denied.

**Attempts to Relocate**

27. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.

28.     Defendants admit that the Code of the Borough of Woodcliff Lake permits as a conditional use houses of worship in all residential zones which constitute the vast majority of property within the Borough so long as the applicant meets nine requirements including a minimum lot size of three acres, one parking space for every three seats, one space for each staff member, a 400-foot-wide lot as well as other requirements regarding building setbacks, building height and surface coverage. Defendants deny the remaining allegations of paragraph 28.

29.     Defendants admit on information that on or about September 25, 2006 the Pascack Valley Chabad Outreach Center entered into a contract to purchase property located at 75 Werimus Road in Woodcliff Lake. As part of its due diligence, agents of the Pascack Valley Chabad Outreach Center punctured an oil tank and contaminated the property. Thereafter, a dispute arose between the parties and by letter dated February 1, 2007, the Pascack Valley Chabad Outreach Center cancelled the contract. Defendants deny the remaining allegations of paragraph 29.

30.     Defendants admit that it acquired the property in 2010, more than 3 years after Valley Chabad's predecessor entity cancelled its contract. The property was identified as a site for open space acquisition in the Borough's Master Plan adopted December 9, 2002. This site adjoins existing municipal open space and recreation lands to the north and south on Werimus Road, and its acquisition would complete a linkage between existing municipal recreation lands on the west side of Werimus Road and supplement the amount of existing open space in the Borough.

31.     Defendants admit on information that at some point, believed to be in 2012, Valley Chabad entered into a contract to purchase property located at 28 County Road. Defendants deny the remaining allegations contained in paragraph 31.

32. Denied.

33. Defendants admit that on or about September 21, 2012, the seller of 28 County Road cancelled the contract of sale with Valley Chabad. Defendants deny the remaining allegations contained in paragraph 33.

34. Admitted.

35. Defendants admit that currently there are some townhomes on County Road.

36. Defendants are without information sufficient to form a belief as to when Valley Chabad began to explore relocating to Galaxy Gardens.  Defendants admit that the Galaxy Gardens property is located at 223 Woodcliff Avenue and is approximately two acres located in a residential zone in the Borough.  Defendants deny the remaining allegations of paragraph 36.

37. Defendants admit upon information and belief that on or about June 19, 2013, Valley Chabad entered into a contract to purchase Galaxy Gardens.

38. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.

39. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39.

40. Admitted.

41. The referenced document speaks for itself and, to the extent that the allegation is inconsistent with the document, it is denied.  Further, the minutes indicate that the minutes of the meeting are not verbatim.

42. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42.

43. Defendants admit that at the Mayor and Council meeting of October 21, 2013, a resolution was unanimously adopted as set forth in the public minutes. Defendants deny the remaining allegations contained in paragraph 43.

44. Defendants admit that by letter dated December 5, 2013, the seller of Galaxy Gardens served notice of its intention to terminate the contract unless the seller was released from any environmental clean-up or remediation costs. Thereafter, Valley Chabad voluntarily terminated the contract by letter dated January 10, 2014. Valley Chabad never made an application to the Zoning Board or Planning Board related to Galaxy Gardens. Defendants deny the remaining allegations contained in paragraph 44.

45. Defendants admit that four years after Valley Chabad voluntarily terminated the contract to purchase Galaxy Gardens, the Borough voted on February 1, 2018 to approve a $1.65 million purchase of Galaxy Gardens through a negotiated contract. The Borough never instituted eminent domain proceedings with regard to the property. The Defendants deny the remaining allegations contained in paragraph 45. Carlos Rendo was not the Mayor when Valley Chabad entered into a contract to purchase the Galaxy Garden property.

**Valley Chabad's Zoning Board Application**

46. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.

47. Admitted.

48. Defendants admit that the proposed house of worship included a mitzvah, space for holiday services, Hebrew school classes, weddings, bar and bat mitzvahs, and community events, but it also included an underground covered parking, a sanctuary and social hall, kitchen, library, six offices, seven classrooms, and a roof top deck.

7

49. Defendants deny that the application to the Zoning Board listed five design waivers and 14 variances. The application sought nine "D" variances pursuant to New Jersey Statute and nine "C" variances and nine design waivers. Section 380-13 of the Woodcliff Lake Code permits houses of worship and related religious uses if nine specific standards are met. The proposed plan did not meet any of the standards. Defendants admit that a house of worship is required to have three acres, a lot width of 400 feet, and that the requested variances departed from conditions required for houses of worship and proposed deviations from generally acceptable zoning ordinances including those that govern critical slope areas.

50. Denied. There were 17 meetings commencing on December 16, 2014 and ending on August 23, 2016. The January 2015 meeting was cancelled due to weather; Valley Chabad failed to appear on August 25, 2015; the October 2015 meeting was cancelled at the applicant's request; the applicant failed to appear for meeting on four consecutive months, *i.e.*, December 15, 2015, January 2016 and February 2016, and March 29, 2016; and the April 2016 meeting was not heard due to the applicant's giving improper notice, which caused a seven (7) month delay in the application. Once Valley Chabad finalized its plans, which were initially deficient, the application was decided within 90 days.

51. Defendant admit that beginning in January 2015, legal counsel entered an appearance on behalf of Woodcliff Lake Residents for Reasonable Development LLC, appeared at some of the meetings, and raised land use issues. Defendants deny the remaining allegations contained in paragraph 51.

52. Defendants admit that revisions were made to the application, however, Defendants deny that they were substantive revisions and that they were made in good faith. The initial plans were significantly deficient in numerous respects, including the 11 initial comments

by the Fire Department, a retaining wall design within a few feet of the property line, and a drainage pipe that could not be constructed; and, the purposeful creation of variances that could have been easily eliminated including the following:

    a. proposing a larger structure than could fit on the property,

    b. proposing two monument signs when only one is permitted,

    c. proposing monument signs three times the size permitted,

    d. proposing fences of six feet in height when the limitation is five feet,

    e. proposing a retaining wall of 20 feet in height located one foot from the side property line which retaining wall was also within one foot of a 24-inch storm sewer making it virtually impossible to construct the retaining wall,

    f. proposing inadequate drive aisles in violation of design standards that would not be approved by the fire department,

    g. proposing an inadequate buffer from residential uses,

    h. proposing a retaining wall with vegetation that would die during northeast winters,

    i. proposing a front yard set-back of 48.5 feet when 50 feet was required,

    j. proposing a rear yard set-back of 49 feet when 50 feet was required,

    k. proposing a side yard requirement of 47.3 feet when 50 feet was required.

Defendants deny that Valley Chabad "shrunk" the proposed house of worship from 17,728 square feet to 12,247 square feet. The initial proposal included a storage area of approximately 4,500 square feet, that its architect could not explain. Despite the concern about inadequate parking, the revised plans increased the size and capacity of the combined social hall/sanctuary by increasing the occupancy load from 324 to 383, while proposing to limit

occupancy to 217 people. Prior testimony indicated the use of 324 movable chairs. The Defendants deny the remaining allegations contained in paragraph 52.

53. Defendants admit that Rabbi Dov Drizin testified at two Zoning Board hearings. Defendants admit that during a May 2015 Zoning Board hearing, counsel for the objector group questioned the Rabbi, and quoted a 2006 news article about the group's outreach to the 13,627 Jewish individuals who live in the Pascack Valley area; however, it is denied that counsel described Valley Chabad's growth as exponential. Defendants deny the remaining allegations contained in paragraph 53.

54. The record speaks for itself, and to the extent that the allegations are inconsistent with the record, they are denied. Further, the allegations are vague and witnesses are not identified; however, Defendants deny that the sanctuary would rarely be used for the proposed maximum occupancy of 219 people as the testimony indicated that the property would be used for religious holidays, speaking events, bar mitzvahs, bat mitzvahs, and other events, and they deny the remaining allegations contained in paragraph 54.

55. Defendants deny the allegations of paragraph 55, and specifically deny that Valley Chabad can keep attendance at the particular number. Rabbi Dov Drizin testified in May 2015 that there would be 324 seats, that at some services they have had 350 to 400 people and at some speaking engagements over 800 people have attended. Rabbi Dov Drizin also testified that most synagogues fill up beyond capacity. He also acknowledged that even with pre-registration or selling tickets, it is possible that people either ignore it or do not understand and they come anyway. Prior occupancy limits imposed on the use of the property were not followed in the past, and will not be sufficient in the future.

56. Defendants deny that the owner of the farm does not object to the proposed construction or the proposed retaining wall; the owner of the farm property did not testify or appear at the hearing and never stated that he had no objection.

57. Admitted.

58. Admitted.

59. Defendants admit that Resolution 16-07 cited in part "detrimental visual impact" which would be caused by an approximately 16 foot, two-tier retaining wall upon which a five-foot fence will be erected as well as a structure of approximately 33 feet in height all located on a property less than half of the required parcel size, and that the height of the building from the finished grade to the ridge line at the rear of the property would be 45 to 60 feet and visible from Werimus Road, and that the residential property to the south would view a combined retaining wall and structure of approximately 50 feet. The residential structure to the south is approximately 25-30 feet from the property line where the retaining wall would be located. Defendants admit that Resolution 16-07 also cited adverse impact of the proposed house of worship on the residential character of the neighborhood for all the reason set forth therein.

60. Defendants admit the allegations contained in paragraph 60, except that the allegations are incomplete as to limitations and past history.

61. Defendants deny the allegations contained in paragraph 61. Rabbi Drizin testified that most synagogues fill up beyond capacity. He acknowledged that even with pre-registration or selling tickets, it is possible that people either ignore it or do not understand and they come anyway. Testimony indicated that prior occupancy limits imposed upon the use of the property were not followed in the past. Rabbi Drizin was notified by letter in August 2005 that the building on the property was "unprotected wood frame" with a limited occupancy rating. He was

notified it was dangerous and illegal to occupy the structure with more than 15 people. An incident report dated September 24, 2005 noted approximately 150 people observed at the site. The property was regularly used for services of up to 30 to 40 people. Further, the record speaks for itself, and to the extent that the allegations are inconsistent with the record, they are denied.

62.     Defendants admit the allegations contained in paragraph 62, except for the word "hypothetically."

63.     Defendants admit that Valley Chabad proposed as a condition a 219-person occupancy limit however, the Board rejected this condition because Valley Chabad had modified its plan so that the sanctuary could accommodate 384 seats and proposed the use of moveable and folding chairs to accommodate such capacity, making it unlikely that staggering start times, pre-registration for events and holding events at other locations would be followed in the future.

64.     Admitted.

65.     Defendants admit that in or around March 2016 the Borough enacted a resolution that prohibited parking on Overlook Drive based on the recommendation of the Police Chief related to overflow parking from a local farm and safety concerns.

66.     Defendants admit that Resolution 16-07 concluded that the proposed development was likely to cause additional erosion and flooding of the Muskquapsink Brook. Defendants deny the remaining allegations of paragraph 66. The State standards referred to did not address local conditions, including the fact that the Muskquapsink Brook is a flood hazard area as designated by the State of New Jersey. In addition, the Construction Code Official testified about flooding and erosion problems within the Borough and other communities downstream.

67.     Defendants admit that Resolution 16-07 stated that Valley Chabad had not obtained the required consent and approval of the New Jersey Turnpike Authority which owns

the land that borders 100 Overlook Drive to the east and north and the proposed drainage plan. Defendants deny the remaining allegations contained in paragraph 67.

68. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68.

69. Defendants admit that the Zoning Board suggested six alternative properties for Valley Chabad's proposed relocation. Defendants admit that one of the properties was not located in Woodcliff Lake but is in the Pascack Valley area. Defendants are without information sufficient to form a belief as to whether any of the properties were in a wetlands area, and they deny the remaining allegations of paragraph 69. Of the properties suggested, the JCC property in Washington Township became available in 2015, and is located 2.7 miles from the subject site and approximately 1.5 miles from the Woodcliff Lake border. It has since been acquired by another religious organization. The property located at 291 Chestnut Ridge Road (3.4 acres) is still listed for sale and is one-half mile from the County Road property, and the list price is significantly less than the contract prices for the 75 Werimus Road property, and the Galaxy Gardens property. The property at 27 Pascack Road is over three acres, and the sale price was significantly less than the contract price for the 75 Werimus Road property, and the Galaxy Gardens property. In 2008, Valley Chabad also canceled a contract to buy property in the neighboring town of Hillsdale.

70. N/A [no allegations]

71. Denied.

72. Denied.

73. Denied.

74. Denied.

13

75. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

76. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

77. Denied.

78. Denied.

79. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

80. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

81. Denied. The allegations in this paragraph are denied as conclusions of law to which no response is required.

## RLUIPA – Substantial Burden

82. Defendants incorporate by reference each of the foregoing responsive paragraphs as if same were set forth at length herein.

83. Denied.

84. Denied.

**WHEREFORE**, Defendants Borough of Woodcliff Lake and Woodcliff Lake Zoning Board of Adjustment demand judgment in their favor and against the United States of America, dismissing the Complaint in its entirety with prejudice, together with attorneys' fees and costs of suit, and for such other and further relief as this Court may deem just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred by the applicable Statute of Limitation.

### THIRD AFFIRMATIVE DEFENSE

Valley Chabad has suffered no valid civil rights violation and therefore, the Complaint fails to meet the statutory requirements of the Religious Land Use and Institutionalized Persons Act.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred by Valley Chabad's failure to mitigate.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred by public policy.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred by the Doctrine of Waiver, the Doctrine of Laches, unclean hands, and/or acquiescence, and other equitable doctrines as they pertain to Valley Chabad.

**SEVENTH AFFIRMATIVE DEFENSE**

The Court lacks jurisdiction over this action as an appeal from the Zoning Board determination should have been brought by Valley Chabad in the Superior Court of New Jersey, Law Division, Bergen County.

**EIGHTH AFFIRMATIVE DEFENSE**

The controversy before the Court is not ripe as Valley Chabad failed to appeal to the Superior Court of New Jersey from the Zoning Board's determination.

**NINTH AFFIRMATIVE DEFENSE**

The Complaint should be dismissed for Valley Chabad's failure to exhaust judicial remedies in state court.

**TENTH AFFIRMATIVE DEFENSE**

Defendants reserve their right, upon completion of discovery and investigation or otherwise, to assert further applicable defenses.

## CERTIFICATION PURSUANT TO L.Civ.R. 11.2

The undersigned, certifies on behalf of Defendants Borough of Woodcliff Lake and Woodcliff Lake Zoning Board of Adjustment, that the matter in controversy is consolidated for discovery purposes with the following related action: *Valley Chabad, Inc. v. Borough of Woodcliff Lake, N.J. et al.*, Civil Action No. 2:16-cv-08087-JLL-JAD, pending in the United States District Court for the District of New Jersey.

                                  **KROVATIN KLINGEMAN LLC**
                                  Henry E. Klingeman, Esq.
                                  Helen A. Nau, Esq.
                                  60 Park Place, Suite 1100
                                  Newark, New Jersey 07102
                                  (973) 424-9777
                                  *Attorneys for Defendants*

                                By: /s/ Henry E. Klingeman
                                      Henry E. Klingeman, Esq.

Dated: August 14, 2018