**MARSHALL DENNEHEY**
**WARNER COLEMAN & GOGGIN**
ATTORNEYS-AT-LAW    WWW.MARSHALLDENNEHEY.COM
A PROFESSIONAL CORPORATION

425 Eagle Rock Avenue, Suite 302,  Roseland, NJ 07068
(973) 618-4100  Fax (973) 618-0685
*Justin F. Johnson, Resident Managing Attorney*

Direct Dial:  (973) 618-4118
Email:  hbmankoff@mdwcg.com

**PENNSYLVANIA**
Allentown
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton

**NEW JERSEY**
Cherry Hill
Roseland

**DELAWARE**
Wilmington

**OHIO**
Cincinnati
Cleveland

**FLORIDA**
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**NEW YORK**
Long Island
New York City
Westchester

March 19, 2018

VIA ELECTRONIC MAIL

Sieglinde Rath, Esq.
Storzer & Associates, P.C.
1025 Connecticut Avenue
Suite One Thousand
Washington, D.C  20036

    RE:  Valley Chabad v. Borough of Woodcliff Lake
         Docket No.:    2:16-CV-08087-JLL-JAD
         Our File No.:  41034.00106

Dear Sieglinde:

    Attached are the Zoning Board of Adjustment answers to plaintiffs' interrogatories.

                             Very truly yours,

                             */s/ Howard B. Mankoff*

                             Howard B. Mankoff

HBM:ssierra
Attachment

LEGAL/115459518.v1
FOLDER 8 – CLIENT DISCOVERY

| | |
|---|---|
| Valley Chabad, Inc., a New Jersey nonprofit corporation and Rabbi Dov Drizin,<br><br>Plaintiffs<br><br>v.<br><br>Borough of Woodcliff Lake, N.J. and Zoning Board of Adjustment of the Borough of Woodcliff Lake, N.J., Carlos Rendo, individually and in his official capacity as Mayor of the Borough of Woodcliff Lake, and Paul Bechtel in his official capacity as Property Maintenance Officer of the Borough of Woodcliff Lake<br><br>Defendants | CASE NO.: 2:16-CV-08087-JLL-JAD<br><br>Civil Action<br><br>**DEFENDANT, ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF WOODCLIFF LAKE ANSWERS TO INTERROGATORIES** |

## OBJECTIONS

1. Defendant objects to these interrogatories to the extent that they seek information which is neither relevant to the subject matter of this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

2. Defendant objects to these interrogatories to the extent that they are overly broad, and to the extent that they are unduly burdensome.

3. Defendant objects to these interrogatories to the extent that they are vague and ambiguous or fail to identify the information being requested with reasonable particularity.

4. Defendant objects to these interrogatories to the extent that they seek the disclosure of documents or information protected by the attorney-client privilege and/or the work product doctrine.

5. Defendant objects to these interrogatories insofar as they attempt to impose obligations in excess of those authorized by the Rules Governing the Courts. Defendant will respond to Plaintiff's First Set of Interrogatories to Defendant but will not provide responses or documents to the extent that they would exceed the requirements of same.

6. The Interrogatories as drafted are burdensome and extensive and as such may have to be amended if required.

## INTERROGATORIES

1. Legal counsel and members of the Zoning Board of Adjustment.

2. All persons named herein, all members of the Zoning Board of Adjustment, all persons who testified during the Plaintiff's application before the Zoning Board of Adjustment as identified in transcripts of the proceedings, all persons named in any records provided in response to the request for production of documents, all expert witnesses as set forth in reports supplied in response to request for production of documents and those who testified at the hearing of the application before the Zoning Board of Adjustment, all persons named in any other interrogatories answered by any other party and all such other persons as continuing investigation and discovery shall reveal.

3. This interrogatory is overly broad, and unlimited in time, and irrelevant to the subject of this litigation, burdensome, and will not lead to discoverable and admissible evidence. Subject to objection and limited to applications that were filed with the Zoning Board of Adjustment since 2000, there has been one religious institution application as follows: Our Lady Mother of the Church, Block 1402, Lot 8, Woodcliff Avenue, approximate date of filing September 2001, one hearing date on September 25, 2001, preliminary and final site plan approval granted for construction of a 1,848 square foot modular building and increase in impervious coverage from 59.48% to 60.04%.

4. June 24, 1997 - Woodcliff Lake Manor Care Center, 555 Chestnut Ridge Road. Variance granted for construction of a terrace at a nursing home.

January 27, 1998 and February 24, 1998 - Omnipoint Temple Emanuel, 87 Overlook Drive. Variance granted to construct a wireless telephone antenna/equipment cabinet atop Temple Emanuel.

June 23, 1998 - Christ Lutheran Church, 32 Pascack Road. Minor bulk variances granted to permit subdivision.

July 28, 1998 - Rabbi Menachem Weiss, Pascack Valley Chabad Outreach Center, 100 Overlook Drive. Application for house of worship with an occupancy of 63. Continued hearing on August 25, 1998. By letter application was withdrawn by applicant.

September 25, 2001 - Our Lady Mother of the Church, Woodcliff Avenue. Preliminary and final site plan approval and impervious coverage increase from 59.48% to 60.04% for the purpose of constructing a 1,848 foot modular building.

November 19, 2002, December 17, 2002, January 28, 2003, February 25, 2003, April 15, 2003 - B & H Enterprises, LLC, 28 County Road. Application for use variance and major site plan approval, maximum building coverage and bulk side yard variances, for a Goddard School (child care center). Variance denied.

July 22, 2003, August 26, 2003, October 28, 2003, November 18, 2003, December 16, 2003, February 10, 2004, February 24, 2004, March 23, 2004, June 22, 2004, July 27, 2004, September 8, 2004 and November 16, 2004 - Lodge Works, L.P. proposed Sierra Suites Hotel, Chestnut Ridge and Glen Avenue. Application for use variance in the Special Office II District for redevelopment of property with a 143 room Sierra Suites Hotel with related site improvements. Variance denied.

July 26, 2011, September 27, 2011 - Potomac Homes, 290 Werimus Road. Application to increase residential capacity of group home from 15 residents to 16 residents. Application dismissed without prejudice based upon failure to prosecute and pay escrows.

December 16, 2014, February 17, 2015, February 24, 2015, March 24, 2015, April 28, 2015, May 26, 2015, June 23, 2015, July 28, 2015, September 9, 2015, September 24, 2015, May 24, 2016, June 14, 2016, July 26, 2016, August 16, 2016, August 23, 2016 - Valley Chabad change of use, site plan application with variances. Application denied.

5. Objection. This interrogatory is overly broad and the response given will not be a waiver of the objection and is limited to assembly or institutional uses, schools or educational institutions, daycare centers, hospitals, medical facilities, auditoriums, stadiums, halls, clubs, lodges, youth centers, social organizations or camps, convalescent and nursing homes, correction facilities, conference centers, recreation centers or theaters. See response to interrogatory no. 4.

6. Objection, before a governmental interest is required, plaintiff must prove that a substantial burden has been imposed, without waiving objection and only if it is determined that a substantial burden has been imposed, the following response is given.

### A. PUBLIC SAFETY

3

Based upon occupancy rules for the expanded sanctuary 383 people could occupy the enlarged sanctuary which by Ordinance would require 127 parking spaces plus one additional space for each staff member (Ordinance parking ratio of 1 parking space for each 3 people (longstanding requirement). Without sufficient onsite parking, there will be an overflow of parking into the residential neighborhoods, notably on Mill Road Extension and neighborhoods to the west. There can be no parking to the east as the property which is bordered by the Garden State Parkway. There is no street parking on Overlook Drive. There are numerous pedestrian hazards along Overlook Drive. Overlook Drive has a 40 mile per hour speed limit with insufficient lighting. If parking in the residential neighborhoods to the west, a pedestrian would have to cross Overlook Drive. There is also an issue of pedestrian safety due to the fact that there are no sidewalks on Overlook Drive and those wishing to walk to the subject site would encounter insufficient shoulders to walk. In addition, visibility in the area is limited.

### B. FLOODING

The proposed development is likely to cause additional erosion and flooding of the Muskquapsink Brook which has been delineated a flood hazard area by the State of New Jersey. This will exacerbate resident complaints concerning erosion and flooding both within the Borough of Woodcliff Lake and neighboring communities of Hillsdale, Westwood and Emerson. The New Jersey Turnpike Authority by letter dated August 19, 2016 stated that the applicant was advised that drainage calculations were required to be provided for the Authority's review. The New Jersey Turnpike Authority could not make a determination regarding accepting storm water runoff into the Garden State Parkway right of way and approval would depend upon the extent of impact to the Authority's infrastructure. The applicant failed to provide the calculations to the Authority or provide testimony on the issue of flooding.

### C. THE APPLICATION IS INCONSISTENT WITH THE RELEVANT GOALS OF THE MASTER PLAN

The Master Plan goals include (1) reaffirming and advancing the existing residential character in the municipality which consists of primarily single family dwelling units; (2) providing adequate buffers between residential and nonresidential uses and (3) effectuating development using the natural features of the land to the greatest extent possible including the land's natural features and physical characteristics such as steep slopes, tree preservation and soil movement and elimination of erosion. The application was inconsistent with each of these goals as follows:

### 1. THE RESIDENTIAL CHARACTER OF THE NEIGHBORHOOD WOULD BE ADVERSELY IMPACTED BECAUSE THE PROPOSED USE WOULD BE HIGHLY VISIBLE FROM THE ROADWAY AND NEARBY PROPERTIES

4

The height of the building from finished grade to the ridge line to the rear of the property would be 45 to 60 feet and visible from Werimus Road. The property to the south would view a combined retaining wall and structure of approximately 50 feet. See also paragraph A. PUBLIC SAFETY which also has an adverse impact on the residential character of the neighborhood.

### 2. THE PROPOSED USE DOES NOT PROVIDE ADEQUATE BUFFERING FROM RESIDENTIAL USES

The proposed retaining wall is only 10 feet from the southerly boundary. A 30 foot landscaped buffer is required per Ordinance. Parking spaces are only set back 2.5 feet from the public right of way and less than 25% of the parking area is buffered from adjacent properties.

### 3. THE PROPOSED USE WILL NOT MAINTAIN ANY PHYSICAL CHARACTERISTICS OF THE PROPERTY

All trees (88 in number) would be removed from the property and 100% of the steep slope would be altered. The proposed building is not designed to blend with the land's natural features and physical characteristics.

There will be a substantial and detrimental impact to surrounding properties and neighborhood based upon insufficient buffering from residential uses. A detrimental visual impact would be caused by an approximate 16 foot two-tier retaining wall upon which a five-foot fence would be erected as well as a structure of approximately 30 feet in height all located on a property less than half of the parcel size required.

The Zoning Board considered less restrictive means to achieve such interest if possible and in particular the Board considered whether any conditions could be imposed to alleviate the detrimental impact of application including limiting occupancy to the building. Given the size of the proposed building and planned activities, it is unrealistic and unlikely that the occupancy would be limited. The limitation would also not satisfy the needs of the Chabad. Testimony indicated that prior occupancy limits imposed upon the use of the property were not followed in the past and will not likely be sufficient in the future. Specifically, Rabbi Drizen was notified by letter in August of 2005 that the building was an "unprotected wood frame with a limited occupancy rating and it was dangerous and illegal to occupy the structure with more than 15 people". An incident report dated September 24, 2015 noted approximately 150 people observed at the site. In addition, Rabbi Drizen testified that he tried to limit occupancy with pre-registration or selling tickets but such efforts were not successful. Due to the extent of the proposed development and the topography of the property, conditions cannot be imposed to alleviate the detriment to the public good and the substantial impairment of the intended purposes of the Master Plan, specifically provisions relating to flooding, parking, pedestrian safety, the impact on steep slopes, lack of adequate buffer, noise, lighting and other detriments. The property

5

cannot accommodate the intensity of the proposed development and use of the 1.27 acre piece of property. The Board also considered less restrictive means and suggested to the applicant that the development of the property be reduced in scope and in particular the size of the sanctuary or that the applicant consider a larger site to accommodate the type of development requested. Although the applicant's planner did not conduct an inquiry of available sites within the Borough, the Board suggested larger more suitable sites available to the applicant including:

   (i) the JCC property in Washington Township within the Pascack Valley area that became available in 2015 and is located 2.7 miles from the subject site and approximately 1.5 miles from the Woodcliff Lake border;

   (ii) property located at 291 Chestnut Ridge Road;

   (iii) property located at 256 Pascack Road north;

   (iv) the undeveloped property located on Pascack Road south;

   (v) property located on Brookview Drive;

   (vi) the property located at 27 Pascack Road.

7. See response to no. 6 above.

8. The Ordinance requires a 30 foot landscaping buffer between residential and nonresidential uses. The plaintiff proposed a multi tier retaining wall at a height of 16 feet with the addition of a five-foot fence on top dividing the property to the south which would according to the Zoning Board's planner be the subject of a residential development. The Board requested a rendering of the retaining wall and landscaping, however, it was never sufficiently produced by the applicant.

9. The plaintiff's proposed use will not maintain any physical characteristics of the subject property which is based upon the testimony and report of the Zoning Board's engineer who reviewed the demolition plan and noted that all trees (88 in number) on the property would be removed and that all of the soil of the property would be disturbed in violation of the Borough Ordinances which were created to maintain the physical characteristics of property.

10. See response to no. 6 above.

11. See response to no. 6 above.

12. See response to no. 6 above. See also police reports of the Woodcliff Lake police department.

6

13. See response to no. 6 above as well as the testimony of the Zoning Board's engineer Joseph Vuich as well as the testimony of Nicholas Saluzzi, Construction Code Official.

14. See response to no. 6 above, paragraph C (3) (i) through (vi).

15. See response to no. 6 above.

16. See transcripts of the hearing as well as the minutes where multiple requests were made.

17. The factual support for paragraph 29 of the Resolution is as follows: the plans and exhibits submitted by the applicant as well as the testimony of its engineer Jeffrey Martell established that the drainage plan does not call for retention of any water on the property and will connect to a drainage system that provides for drainage from the Garden State Parkway which is under control of the New Jersey Turnpike Authority. Mr. Martell testified that the Authority was okay with the plan, however, inquiry was made by the Board to the New Jersey Turnpike Authority. The Authority issued a letter dated August 19, 2016 in which indicated among other things that the Authority has not granted any approvals relative to the applicant's proposed site plan. The Authority further stated in the letter that it expressed concern regarding the design and location of the proposed retaining wall and advised the applicant that drainage calculations are required to be provided for the Authority's review. The Authority did not make a determination regarding the acceptability of direct storm water runoff onto the Garden State Parkway right of way. Approvals will depend upon the extent of the impact on the Authority's infrastructure. The letter further states that the applicant was advised that the Authority would not allow the applicant to utilize the Authority's property for construction or maintenance of the retaining wall (see copy of letter dated August 19, 2016). Insufficient testimony was given with regard to the safety of the retaining wall system and there was no testimony or provision for removal of snow and its impact upon parking.

18. Objection. This question is overly broad, and irrelevant. Without waiving objection and subject to objection, there has never been an application of the nature and extent of that filed by Valley Chabad.

19. Objection, overly broad. To the extent communications were made unrelated to notice and scheduling of meetings that are not subject to privilege, see response to notice for production of documents.

20. Objection, overly broad and improper. Without waiving objection, public statements were made during the course of the application before the Zoning Board which are public meetings. Board members made comments at the conclusion of the application as set forth on the transcript of the proceedings on August 23, 2016 beginning on page 207. Defendant reserves the right to amend this response.

7

21. See response to request for production of documents. Defendant reserves the right to amend this response.

22. Objection, overly broad. As reflected in the public record. Defendant reserves the right to amend this response.

23. The question is irrelevant because the Board did not make a finding that the applicant's use was not an inherently beneficial use. N.J.S. 40:55D-4 does not list churches and other places of worship as inherently beneficial. When the need of the proposed use is already satisfied, it may no longer be necessary to consider a use inherently beneficial. See New Jersey Zoning and Land Use Administration by William M. Cox and Stuart R. Koenig, revised and updated by Jonathan E. Drill and Lisa A. John-Basta, section 32-5.1 (2016 Ed.). According to the testimony of Rabbi Dov Drizen there are numerous temples in the area including Temple Emanuel across the street from the applicant's location and various other temples serving the Pascack Valley area.

24. The initial application contained nine (9) D3 variances, 10 C variances and 9 waivers. These variances should not have been in the original application. Examples of the creation of variances include:

    a. proposing a larger structure than could fit on the property,

    b. proposing two monument signs when only one is permitted,

    c. proposing monument signs three times the size permitted,

    d. proposing fences of six feet in height when the limitation is five feet,

    e. proposing a retaining wall of 20 feet in height located one foot from the side property line which retaining wall was within one foot of a 24 inch storm sewer making it virtually impossible to construct the retaining wall,

    f. proposing inadequate drive aisles in violation of design standards that would not be approved by the fire department,

    g. proposing an inadequate buffer from residential uses,

    h. proposing a retaining wall with vegetation that would die during northeast winters,

    i. proposing a front yard set back of 48.5 feet when 50 feet was required,

    j. proposing a rear yard set back of 49 feet when 50 feet was required,

    k. proposing a side yard requirement of 47.3 feet when 50 feet was required.

All of the above should have never been in the application.

  In addition to the foregoing, one of the critical elements was the parking and the size of the combined sanctuary/social hall. The occupancy load has a direct impact on the parking that would be required. When the applicant revised the plans, it enlarged the size of the combined sanctuary/social hall and the applicant's architect indicated that the combined space could accommodate 383 people. Based upon the revised application, the applicant increased the parking demand and the adverse impacts on the residential neighborhoods.

  25. See response to no. 24. See comments of members of the Board as set forth on the transcript of August 23, 2016 beginning on page 267. See goals of the Master Plan as set forth in response to no. 6 above.

  26. See the public record including the resolution and minutes of the meetings which will indicate that the applicant failed to appear at the hearing on August 25, 2015. The October 27, 2015 meeting was cancelled at the applicant's request. The applicant did not appear at the December 15, 2015 meeting, January 26, 2016 meeting or the February 23, 2016 meeting. The applicant further did not prosecute the case on March 29, 2016. In addition, the application could not be heard on April 26, 2016 due to the applicant's improper notice.

  27. Applicant's engineer Jeffrey Martell testified that the drainage plan calls for the discharge of all water by tying into a drainage system used by the Garden State Parkway for water runoff. This system discharges water into the Muskquapsink Brook which has been delineated a flood hazard area by the State of New Jersey. Based upon the testimony of Construction Code Official Nicholas Saluzzi as well as Borough Engineer, Joseph Vuich, there have been resident complaints concerning erosion and flooding both within the Borough of Woodcliff Lake and the neighboring communities of Hillsdale, Westwood and Emerson related to the Muskquapsink Brook.

  In addition to the foregoing, no approval was given by the New Jersey Turnpike Authority that controls the Garden State Parkway drainage system. The applicant never provided drainage calculations required for the Authority's review. The Authority could not make a determination accepting storm water runoff into the Garden State Parkway right of way. There is no analysis of the extent of impact to the Authority's infrastructure and no analysis of the impact upon the flooding of the Muskquapsink Brook.

  28. See answer to no. 23 above.

  29. Objector's exhibit O-7. Testimony by Police Chief Anthony Jannicelli and the physical features of Overlook Drive that show varying and narrow shoulder widths. There are no sidewalks and a limited line of sight.

9

30. The applicant's original plans as testified to by architect Alan Weitzman provided that 324 people would be in attendance when the facility is used as a sanctuary. Based upon the Borough Code, that would require 108 parking spaces. The applicant revised the plans and enlarged the combined social hall and sanctuary to accommodate 383 people which would require 127 parking spaces. In addition to the foregoing, one parking space is required for each employee. The applicant proposed 73 parking spaces which is short of the requirement.

31. Objection. This question is improper and contains an allegation which is denied. This question is unduly burdensome and requires preparation of irrelevant reports for the plaintiff. This question is overly broad and requires an analysis of data that is not readily available. This question is also irrelevant as each application is unique and based upon different factors making any comparison with other applications inappropriate. Provided, however, without waiving objection, the number of calendar days it takes from time of application to a decision is based upon numerous factors including, but not limited to, the following:

    a. the nature of the application,

    b. the number and extent of variances,

    c. whether or not site plan approval is sought together with variances,

    d. the quality of the original submission,

    e. the manner of presentation of the witnesses,

    f. whether or not there are any objectors to the application,

    g. the number of witnesses called,

    h. the number of members of the public testifying or making comments on the application,

    i. whether or not the Board calls its own witnesses,

    j. the amount of public comment,

    k. the number of continuances requested by the applicant,

    l. whether or not the applicant prosecutes the application diligently,

    m. inclement weather adjournments,

    n. other factors.

Without waiving objection and just by way of example, a simple residential variance could be heard and granted in one day. A complicated application such as a cell tower application could take over 2000 calendar days.

Once the Valley Chabad finalized its plans and provided proper notice, it was heard on six meeting dates commencing May 24, 2016 and ending on August 23, 2016 which is 92 calendar days.

    32.    Objection, improper. This question contains allegations that are denied. See prior answer no. 31 and 18.

    33.    Objection, this question calls for examination of public records and preparation of a report and is unduly burdensome and irrelevant to the issues in this matter.

    34.    See response to no. 33 and 18.

    35.    See response to no. 33 and 18.

    36.    See response to no. 33 and 18.

    37.    See response to no. 33 and 18.

## CERTIFICATION

I am familiar with the above facts of this case and I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

DATED: 9/27/17

_____
CHRISTINA HEMBREE
Chairwoman, Woodcliff Lake Zoning
Board of Adjustment